918 P.2d 228

STATE of Hawai'i, Plaintiff–Appellee,

v.

John E. SINAGOGA, Defendant–Appellant.

No. 17540.

Intermediate Court of Appeals of Hawai'i.

April 30, 1996.

Joyce K. Matsumori–Hoshijo, Deputy Public Defender, for defendant-appellant.

Loren J. Thomas, Deputy Prosecuting Attorney, City & County of Honolulu, for plaintiff-appellee.

Before BURNS, C.J., and WATANABE and ACOBA, JJ.

Opinion of the court by ACOBA, Judge, except for Part IV.B.4, which is a dissenting opinion.

In a complaint filed on February 24, 1993, Defendant–Appellant John E. Sinagoga (Defendant) was charged with three counts of Terroristic Threatening in the First Degree. On August 9, 1993, he pleaded no contest to Count I and guilty to Counts II and III. Under the Judgment filed on September 29, 1993, Defendant was sentenced to consecutive indeterminate prison terms of five years each on Counts I, II and III. He appeals only the sentences imposed by the Judgment.

## I.

On August 9, 1993, Defendant appeared with his counsel at a change of plea hearing. In preparation for the hearing, Defendant had entered into a plea agreement with the State. Under the agreement's terms, Defendant would plead no contest to Count I, Terroristic Threatening in the First Degree as defined in Hawai'i Revised Statutes (HRS) § 707–716(1)(d) (1993)[1] and guilty to Counts II and III, Terroristic Threatening in the First Degree as defined in HRS § 707–716(1)(a) (1993).[2] In exchange, the State of Hawai'i (the State) would agree to Defendant's request for probation with one year of incarceration and credit for time served. The State also agreed not to seek "enhanced" sentencing.

At the beginning of the hearing, Judge Marcia Waldorf explained to Defendant that according to the change of plea document, Defendant had agreed to plead in accordance with the agreement. Defendant expressed reservations about signing the document, responding, "I do't [sic] know, it just doesn't seem right." The judge recessed the court to allow Defendant time to consult with his counsel.

Reconvening several minutes later, Judge Waldorf reiterated that by signing the change of plea document, Defendant was agreeing to plead as provided in the agreement. Defendant answered that he under-

---

**1.** Hawai'i Revised Statutes (HRS) § 707–716(1)(d) (1993) provides, in pertinent part, that "[a] person commits the offense of terroristic threatening in the first degree if the person commits terroristic threatening ... [w]ith the use of a dangerous instrument."

**2.** HRS § 707–716(1)(a) (1993) provides, in pertinent part, that "[a] person commits the offense of terroristic threatening in the first degree if the person commits terroristic threatening ... [b]y threatening another person on more than one occasion for the same or a similar purpose[.]"

stood the document and confirmed, in responses to further questions, that he had the requisite capacity to enter the plea. In the course of accepting the plea, Judge Waldorf informed Defendant that the court could order an "extended term[,]" that is a "doubling" of the five-year ordinary sentence on each count to ten years on each count, which, if imposed consecutively, would total thirty years.[3] The court also explained that neither she nor any other judge was bound by the plea agreement reached between Defendant's attorney and the prosecutor. Defendant indicated that he understood this.

> [Judge Waldorf:] All right. Do you further understand, though, [Defendant], that as a matter of fact, the court, *whether it be me or any other judge*, is not compelled to follow agreements that are reached by attorneys. You understand that?
>
> [Defendant:] Yes, I do.

(Emphasis added.) Defendant then entered a plea of no contest to Count I and pleas of guilty to Counts II and III. After it accepted Defendant's pleas, the court, through its clerk, informed the parties that sentencing would take place before "Judge Spencer" on September 29, 1993.

At the sentencing hearing before Judge Leland H. Spencer, both the prosecutor and the public defender requested that the court follow the plea agreement. Instead, Judge Spencer orally reviewed Defendant's prior criminal record, which included convictions in various jurisdictions for burglary, assault, driving under the influence, and drug and concealed weapon possession. Judge Spencer noted that the offenses Defendant was charged with in the present case were felonies involving violence, and that Defendant

was not a young man. Judge Spencer then declared that Defendant would be "a danger to people, whether in Hawaii [Hawai'i] or any other state where he happens to be; and that as long as he's free to do so, he's going to continue to be a danger to both people and to property." Judge Spencer, thereafter, sentenced Defendant to an indeterminate term of imprisonment of five years on each count, with the terms to run consecutively.

Defendant's October 26, 1993 motion for reconsideration and modification was denied on January 13, 1994.

Defendant raises four points on appeal. We consider them *seriatim.*

## II.

■ Defendant argues that, in accepting Defendant's plea, Judge Waldorf employed language indicating she would retain sentencing authority under the agreement. Thus, he maintains, an implied term of the plea agreement was that Judge Waldorf, not Judge Spencer, would impose the sentence. Defendant relies on *People v. Arbuckle*, 22 Cal.3d 749, 150 Cal.Rptr. 778, 587 P.2d 220 (Cal.1978).

In *Arbuckle*, the defendant entered into a plea agreement with the State of California. The first judge, who accepted the plea bargain, was transferred to another department of the Superior Court. The case was brought before a second judge for sentencing. The defendant's request for sentencing before the first judge was denied. *Id.*

On appeal of the sentence, the California Supreme Court concluded that the defendant entered into the plea agreement "in expectation of and in reliance upon sentence being

---

**3.** During the change of plea hearing, Judge Waldorf stated,

> [Judge Waldorf:] But just from the number of charges here presently it is possible that the court could order a sentence double, that is, extended term which is reflected on this document, double the normal sentence, and so that's why your attorney has indicated that the extended term could be 30 years. And the state's not asking for that but I just want to tell you how that would work.
>
> That would be by taking each of the 5 years and doubling them to 10, that would be the extended term, and then if the sentences were

made to run consecutively, that is, back to back, that's how it would come up to 30 years, obviously. But the sewntencing [sic] agreement is not only that the state won't ask for that but actually has agreed to ask for one year of incarceration, total. You understand that part of it?
> [Defendant:] Yes ma'am.
> [Judge Waldorf:] You understand how it gets to 30 years?
> [Defendant:] Yes, I do.
> [Judge Waldorf:] And then you understand what the agreement is?
> [Defendant:] Yes, I do.

imposed by the same judge." *Id.* 150 Cal. Rptr. at 782, 587 P.2d at 224. The court rested its decision on "the [first] judge's repeated use of the personal pronoun when referring to sentencing in the proceeding in which the plea bargain was accepted." *Id.* The transcript of that proceeding read as follows: "[Judge:] I have agreed, ... that before I could send you to the State Prison, I would have to get that 90–day diagnostic study and I would follow the recommendation." *Id.* 150 Cal.Rptr. at 782 n. 4, 587 P.2d at 224 n. 4.

Here, Judge Waldorf did not repeatedly refer to herself when discussing sentencing. The judge did "[take] note that at least by the pretrial bail report there were no prior felony convictions." However, when the subject of sentencing arose, Judge Waldorf did not specifically refer to herself as the person who would sentence Defendant. The judge said,

> [Judge Waldorf:] But just from the number of charges here presently it is possible that *the court* could order a sentence double, that is, extended term which is reflected on this document, double the normal sentence, and so that's why your attorney has indicated that the extended term could be 30 years.

(Emphasis added.) In addition, Judge Waldorf stated, "Do you further understand, though, [Defendant], that as a matter of fact, *the court, whether it be me or any other judge,* is not compelled to follow agreements that are reached by attorneys. You understand that?" (Emphasis added.)

Whatever language Judge Waldorf employed in accepting the plea, there was no doubt that Judge Spencer would sentence Defendant and Judge Waldorf would not. At the end of the hearing, the court said:

> [Judge Waldorf:] And what that leaves remaining, [Defendant], is for the matter to be referred to the adult probation division for preparation of a presentence report. That is a report certainly in which you should cooperate, because it is in large part what the court will use, *it's not going to be I* but it is what the court will use to determine whether it should follow the agreement reached by counsel and what all [sic]. So most naturally it would be [sic] behoove you to cooperate in that report. *And then the sentencing will be on—.*
>
> [The Clerk:] *September 29, 1993 at 11:30, before Judge [Leland] Spencer.*

(Emphases added.) Plainly, Judge Waldorf did not retain sentencing authority in this case as the judge did in *Arbuckle, supra.*

■ However, judges may now bind themselves to comply with plea agreements. Hawaiʻi Rules of Penal Procedure (HRPP) Rule 11(e)(1), as amended in 1993, states in relevant part that, "[t]he court may participate in discussions leading to such plea agreements and may agree to be bound thereby."[4] Logically, it follows that a judge agreeing to a plea agreement under HRPP Rule 11(e)(1) should serve as the sentencing judge. But this version of HRPP Rule 11 was not in effect at the time of Defendant's sentencing. We hold that, in the absence of a statute, governing procedural rule, or the tripartite concurrence of the prosecution, defense, and court, a judge who merely accepts a defendant's plea is not bound to preside over the sentencing of that defendant.

### III.

### A.

■ As Defendant was informed at the time of his plea, the sentencing court was not

---

4. At the time of sentencing, Hawaiʻi Rules of Penal Procedure (HRPP) Rule 11(e)(1) stated in its entirety:

> The prosecutor and counsel for the defendant, or the defendant when acting pro se, may enter into plea agreements that, upon the entering of a plea of guilty or nolo contendere to a charged offense or to an included or related offense, the prosecutor will take certain actions or adopt certain positions, including the dismissal of other charges and the recommending

or not opposing of specific sentences or dispositions on the charge to which a plea was entered. *The court shall not participate in discussions leading to such plea agreements nor agree to be bound thereby.*
(Emphasis added.)

The last sentence in the rule was subsequently amended on October 28, 1993 to read, "The court may participate in discussions leading to such plea agreements and may agree to be bound thereby.".

required to follow the plea bargain,[5] and Defendant does not challenge Judge Spencer's decision in that regard. However, Defendant contests the court's imposition of three consecutive terms of imprisonment on the three counts of terroristic threatening for which Defendant was convicted. A court's authority to impose consecutive prison terms is granted by HRS § 706–668.5 (1993), which provides as follows:

(1) *If multiple terms of imprisonment are imposed on a defendant at the same time,* or if a term of imprisonment is imposed on a defendant who is already subject to an unexpired term of imprisonment, *the terms may run concurrently or consecutively. Multiple terms of imprisonment imposed at the same time run concurrently unless the court orders* or the statute mandates that *the terms run consecutively.* Multiple terms of imprisonment imposed at different times run consecutively unless the court orders that the terms run concurrently.

(2) *The court,* in determining whether the terms imposed are to be ordered to run concurrently or consecutively, *shall consider the factors set forth in section 706–606.*

(Emphases added.)

HRS § 706–668.5 is the second version of what was originally HRS § 706–668 (1976). The original version "deprive[d] the court of the power to mandate that the sentences imposed upon a defendant be served consecutively" except "for crimes committed by prisoners while in custody or during escape." Commentary to HRS § 706–668 (1985). In 1982, however, the section was amended "to provide the court discretion to sentence a person to a term of imprisonment to run consecutively or concurrently[,]" because the "[p]rior law [which] allowed concurrent sentencing with no discretion to impose consecu-

tive sentences ... negated the deterrence of punishment in cases of a multiple offender[.]" *Id.* The Hawai'i legislature in 1982 concluded that by limiting judges to the imposition of concurrent sentences, the original statute "fail[ed] to deter similar future [criminal] behavior on the part of the particular individual involved." Sen.Stand.Comm.Rep. No. 382, in 1982 Senate Journal, at 1111. The legislature assumed "that judges will exercise their discretion in invoking consecutive terms of imprisonment when appropriate as in instances where the defendant committed multiple or subsequent offenses." *Id.* HRS § 706–668 was repealed in 1986. 1986 Haw. Sess.L. Act 314, § 46 at 614. The substance of the repealed section, however, was retained in the newly enacted version of HRS § 706–668.5 which replaced it.

Accordingly, under HRS § 706–668.5, the court was well within its statutory authority to impose consecutive sentences. *See Keawe v. State,* 79 Hawai'i 281, 285, 901 P.2d 481, 485 (1995). *Cf. State v. Akana,* 10 Haw.App. 381, 384, 876 P.2d 1331, 1333 (1994) (the seven-day term of imprisonment was a condition well within the statutory scope of discretion accorded the sentencing court). This comports with "indeterminate sentencing systems ... [where] the choice of imposing either consecutive or concurrent sentences is usually left to the discretion of sentencing judges." A. Campbell, *Law of Sentencing* § 9:10, at 271–72 (2d ed.1981) (footnote omitted).

**B.**

In imposing consecutive sentences, Judge Spencer was required to apply the factors set forth in HRS § 706–606 (1993). HRS § 706–606 was enacted with HRS § 706–668.5 in 1986. 1986 Haw.Sess.L. Act 314, § 15 at 599–600.[6]

The factors in HRS § 706–606 include:

---

5. At the time of sentencing, HRPP Rule 11(e)(3) provided, "Upon disclosure of any plea agreement, the court shall not accept the tendered plea unless the defendant is informed that the court is not bound by such agreement." The rule was subsequently amended on October 28, 1993 to add the words "unless the court agreed otherwise" to the end of the sentence.

6. While not making specific reference to HRS § 706–668.5 (1993), the 1986 legislature pointed out that HRS § 706–606 (1993) and other amendments to HRS chapter 706 were intended to emphasize deterrence and punishment:

The amendments to section 706, disposition of convicted defendants, demonstrate a shift from the present approach of sentencing which emphasizes rehabilitation toward achieving the

(1) The nature and circumstances of the offense and the history and characteristics of the defendant.

(2) The need for the sentence imposed:

  (a) To reflect the seriousness of the offense, to promote respect for [the] law, and to provide just punishment for the offense;

  (b) To afford adequate deterrence to criminal conduct;

  (c) To protect the public from further crimes of the defendant; and

  (d) To provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) The kinds of sentences available; and

(4) The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

■ Defendant agrees the court considered the factors stated in HRS § 706–606(2)(b) and (c), but contends that it did not consider the factors listed in HRS § 706–606(2)(a), (2)(d), and (3).

We disagree with Defendant's latter position. In light of the court's finding that Defendant posed "a danger to people" and if "free[d]" would "continue to be a danger," the court undoubtedly considered "[t]he need for the sentence . . . [t]o reflect the seriousness of the offense[s], to promote respect for [the] law, and to provide just punishment. . . ." HRS § 707–606(2)(a). Arguably, the "needed . . . correctional treatment" factor in HRS § 706–606(2)(d) was implicit in the court's sentence of incarceration, along with the court's consideration of "[t]he·kinds of sentences available" as the factor in HRS § 706–606(3) required.[7]

■ The fact that a court does not orally address every factor stated in HRS § 706–606 at the time of sentencing does not mean the court failed to consider those factors. The statute contains no requirement that the court expressly recite its findings on the record for each of the factors set forth in HRS § 706–606. Nevertheless, under HRS § 706–668.5, judges are duty-bound to consider HRS § 706–606 factors before imposing sentence. The information relevant to HRS § 706–606 factors is made available to the judges in pre-sentence reports. HRS § 706–601 (1993). The law presumes that judges will conscientiously fulfill their duty to obey the directive of HRS § 706–668.5, and that counsel will offer factor-relevant information at sentencing hearings mandated by HRS § 706–604 (Supp.1992). Therefore, absent clear evidence to the contrary, it is presumed that a sentencing court, following the receipt of a pre-sentence report under HRS § 706–601 and a mandated sentencing hearing under HRS § 706–604, will have considered all the factors in HRS § 706–606 before imposing concurrent or consecutive terms of imprisonment under HRS § 706–668.5.

## C.

■ While there is no requirement that the court recite its findings on the record for each of the factors set forth in HRS § 706–606, the Hawai'i Supreme Court has recommended that a sentencing court state the reasons for its sentence.

Probation for 5 years (HRS [§] 706–623)
Imprisonment for 5 years (HRS [§] 706–660(2))
Fine of Up to $10,000.00 (HRS [§] 706–640(3))
Community Service (HRS [§] 706–605(e))
Extended Term of Imprisonment (HRS [§] 706–662)
Persistent Offender (HRS [§] 706–662(1))
Multiple Offender (HRS [§] 706–662(4))
Multiple Sentence of Imprisonment (HRS [§] 706–668.5)
Repeat Offender (HRS [§] 706–606.5)

---

goal of just punishment. The corresponding deletion of section 706–620, Hawaii [Hawai'i] Revised Statutes, which requires the court to withhold imprisonment unless circumstances mandate otherwise, and the addition of a new section, section 706–606, outlining sections to be considered when imposing sentence, including the need to afford deterrence and to provide just punishment, establish a different view of both incarceration and probation. Hse.Conf.Comm.Rep. No. 51, in 1986 House Journal, at 938.

7. The pre-sentence report provided the court with the following sentencing alternatives:

Although there is no requirement for the sentencing court to state its reasons for imposing sentence, we have urged and strongly recommended that the sentencing court do so and to also state that sentencing alternatives were considered, especially when a young adult defendant is sentenced.

*State v. Lau,* 73 Haw. 259, 263, 831 P.2d 523, 525 (1992).[8]

Unquestionably, Judge Spencer did state the reasons for the court's sentence. Following the approach in *Lau,* however, we believe that the preferable practice is for the sentencing court to also acknowledge on the record that it has considered the factors enumerated in HRS § 706–606 when imposing concurrent or consecutive sentences under HRS § 706–668.5.

Here, the court had the pre-sentence investigation report before it. Defendant presented his own statement to the court. Counsel argued on behalf of Defendant. The court was apprised of the plea bargain. Prior to imposing sentence, the court orally reviewed the history of Defendant's criminal record in detail. Because no clear evidence to the contrary exists, we cannot say, under the circumstances, that the court failed to consider all the factors set forth in HRS § 706–606. Furthermore, "[t]he weight to be given the factors set forth in HRS [§] 706–606 in imposing sentence is a matter generally left to the discretion of the sentencing court, taking into consideration the circumstances of each case." *State v. Akana,* 10 Haw.App. 381, 386, 876 P.2d 1331, 1334 (1994).

The sentencing judge has broad discretion in sentencing. *State v. Gaylord,* 78 Hawai'i 127, 143–44, 890 P.2d 1167, 1183–84 (1995). Thus, typically, the sentencing court has "wide latitude in the selection of penalties from those prescribed by statute and in the determination of the severity of such penalties." *State v. Miller,* 79 Hawai'i 194, 900 P.2d 770 (1995). As a result, absent an apparent abuse of discretion, *State v. John-*

son, 68 Haw. 292, 296, 711 P.2d 1295, 1298 (1985), or the court committing "a plain and manifest abuse of discretion in its decision[,]" *State v. Fry,* 61 Haw. 226, 231, 602 P.2d 13, 17 (1979), such as when the court "rigidly appl[ies] sentencing guidelines promulgated without legislative authority[,]" *State v. Nunes,* 72 Haw. 521, 524, 824 P.2d 837, 839 (1992), the sentencing court will not be reversed. *See Akana,* 10 Haw.App. 381, 876 P.2d 1331 (where a defendant pleads guilty with full knowledge of the court's authority to impose an indeterminate term of imprisonment, the court's imposition of imprisonment does not ordinarily constitute an abuse of discretion).

## IV.

Finally, Defendant maintains that his due process rights were violated because (1) Defendant's sentence was in fact the imposition of an "extended" sentence imposed without benefit of the procedures mandated by HRS § 706–664 (1993), and (2) the prior convictions referred to by Judge Spencer may not be used against Defendant unless it is demonstrated that Defendant was represented by counsel in those cases.

## A.

Defendant submits that if the court relied on his prior convictions, he should have been afforded the "procedural and substantive due process protection ... guaranteed to a criminal defendant before an extended sentence can be imposed[,]" as well as his "statutory due process rights" set forth in HRS §§ 706–664 and 706–662 (1993). HRS § 706–662 sets forth the criteria for imposing an extended term of imprisonment. HRS § 706–664 sets forth the procedure that must be followed prior to imposing an extended term of imprisonment. Thus, the "rights" Defendant claims pertain only to an extended sentence.

The sentence imposed here, however, was not an extended sentence. Defendant was

8.  *State v. Lau,* 73 Haw. 259, 263, 831 P.2d 523, 525 (1992), concerned the sentencing of a young adult under the age of twenty-two years who could have been sentenced under the special provisions of HRS § 706–667 (1985). Such a sentence would reduce the length of incarceration for a young adult defendant.

convicted of three class C felonies. Under HRS § 706–660 (1993), the "ordinary term" for each class C felony was five years. By contrast, imprisonment for the same class C felony under the extended sentence provision, HRS § 706–661, would double the ordinary term to ten years, as Judge Waldorf informed Defendant. *See supra* note 3. Thus, if Defendant had been subjected to an extended term provision, he would have been sentenced to ten years of imprisonment on each of the counts.

Consecutive sentences, accordingly, are not extended sentences. *See State v. Ige,* 61 Haw. 517, 519, 606 P.2d 83, 85 (1980) (in a pre-code sentence, exercise of discretion to retain consecutive sentence did not transform sentence into an extended sentence). *See also* HRS § 706–662(4)(b) (defendant is a multiple offender if the maximum terms of imprisonment would equal or exceed the maximum extended term possible). "Consecutive sentences follow one another seriatim, one being completely served before the next is begun. They result from either conviction of multiple crimes or from conviction of additional crimes while under a prior sentence." A. Campbell, *Law of Sentencing* § 9:10, at 270 (2d ed. 1981) (footnote omitted). On the other hand, "[t]he extended term authorized under the penal code to be imposed by a sentencing judge is a *sentence that enlarges the ordinary sentence for any given offense.*" *State v. Tyquiengco,* 6 Haw.App. 409, 413, 723 P.2d 186, 189 (1986) (emphasis added). While a consecutive sentence increases the defendant's overall term of imprisonment, it does not "enlarge[ ] the ordinary sentence for any given offense"; a consecutive sentence only specifies how multiple sentences will be served. *See Tyquiengco, supra.*

■ We believe Defendant was afforded due process at sentencing. Due process minimally requires " 'notice of the information which is being considered and an opportunity to participate which that notice affords.' " *State v. Ortez,* 60 Haw. 107, 120, 588 P.2d 898, 907 (1978) (quoting Standards Relating to Sentencing Alternatives and Procedures, American Bar Association, § 5.5, Comment c (1968)).

Defendant had been informed at his plea hearing that the sentencing court was not obligated to follow the plea bargain. The pre-sentence report listed consecutive sentences as one of the "[a]pplicable [sentencing] dispositions." Defendant received the statement of Defendant's prior convictions in the pre-sentence report. At sentencing, defense counsel acknowledged receipt "of the presentence report dated September 27, 1993." Defense counsel then proceeded to make corrections to the report. Defendant was present and submitted evidence at the sentencing and reconsideration hearings.

Plainly, Defendant received notice that he might be subject to consecutive terms of imprisonment in the pre-sentence report. *See supra* note 7. Hence, Defendant knew his conviction record had been provided to the court. Defendant had notice of the information the court was to consider. Because Defendant had the opportunity to argue and present evidence at his sentencing and reconsideration hearings, he was clearly afforded the opportunity to participate in the proceedings concerning the information being considered.

### B.

■ Finally, we are confronted with Defendant's assertion that a sentencing court may not consider a defendant's prior convictions in imposing consecutive sentences unless it has been demonstrated that the defendant had the benefit of counsel or had properly waived counsel in the prior proceedings. This is a question of first impression in this jurisdiction. *See State v. Buffalo,* 4 Haw.App. 646, 651 n. 7, 674 P.2d 1014, 1019 n. 7 (1983), *cert. denied,* 67 Haw. 686, 744 P.2d 781 (1984).

In sentencing Defendant to consecutive terms, the sentencing court expressly relied on Defendant's prior convictions.[9] The con-

---

9. THE COURT: All right. The Court has a few comments to make in this case, and it begins with the criminal record of [Defendant] as set forth in the presentence report. Let me begin and end with the criminal record. .
   [ (The court reviewed Defendant's conviction record.) ]

victions were listed in the pre-sentence report without any indication of whether Defendant had counsel or waived counsel in the corresponding cases. The sentencing court made no determination on this issue. We examine separately whether the sentencing court erred in relying on the felony convictions and the misdemeanor and any petty misdemeanor convictions because it has been held that misdemeanor convictions do not necessarily invoke the right to counsel. *See Scott v. Illinois,* 440 U.S. 367, 99 S.Ct. 1158, 59 L.Ed.2d 383 (1979).

1.

In *United States v. Tucker,* 404 U.S. 443, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972), the United States Supreme Court held that uncounseled felony convictions could not be used to enhance a defendant's sentence. Tucker was sentenced under 18 U.S.C. § 2113(d) (1976), which gave the court the discretion to sentence Tucker to up to twenty-five years in prison.[10] In sentencing Tucker to the maximum prison term allowed, the sentencing court "gave explicit attention to the three previous felony convictions the [defendant] had acknowledged." *Id.* at 444, 92 S.Ct. at 590 (footnote omitted). Several years after Tucker was sentenced, it was discovered that he did not have counsel and did not waive his right to counsel in two of the prior convictions considered. While the Supreme Court acknowledged that the sentencing court had the discretion to consider a broad and mostly unlimited spectrum of in-

formation, *id.* at 446, 92 S.Ct. at 590–91, it held that the sentencing court could not impose a sentence "founded at least in part upon misinformation of constitutional magnitude." *Id.* at 447, 92 S.Ct. at 592.

Resting on the right to counsel guaranteed by the United States Constitution's Sixth Amendment, and the "unequivocal rule ... 'making it unconstitutional to try a person for a felony in a state court unless he [or she] had a lawyer or had validly waived one[,]' " the Supreme Court reaffirmed its admonition in *Burgett v. Texas,* 389 U.S. 109, 88 S.Ct. 258, 19 L.Ed.2d 319 (1967),[11] that " '[t]o permit a conviction obtained in violation of *Gideon v. Wainwright*[, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963),] to be used against a person either to support guilt or enhance punishment for another offense ... is to erode the principle of that case.' " *Tucker,* 404 U.S. at 449, 92 S.Ct. at 593 (quoting *Burgett,* 389 U.S. at 114, 115, 88 S.Ct. at 262). The Court rejected prior uncounseled felony convictions as a basis for enhancing punishment through the imposition of a maximum allowable sentence. Therefore, absent a valid waiver of the right to counsel, the use of prior uncounseled felony convictions to enhance a prison sentence violates a defendant's right to counsel. *See id.* We independently adopt this basic proposition under article I, section 14 of the Hawai'i Constitution, which affords accused persons the right to counsel.

We note that the Hawai'i Supreme Court has employed similar reasoning where a sen-

That is the state of his record of convictions, with a few additional offenses in which there are bench warrants outstanding involving a substantial number of the states in our nation. And then he came to Hawaii [Hawai'i].

**10.** 18 U.S.C. § 2113(d) (1976) provided:

Whoever, in committing, or in attempting to commit, any offense defined in subsections (a) and (b) [ (bank robbery) ] of this section, assaults any person, or puts in jeopardy the life of any person by the use of a dangerous weapon or device, *shall be fined not more than $10,000 or imprisoned not more than twenty five years, or both.* (Emphasis added.) Under 18 U.S.C. § 2113(a) and (b) (1976), depending on the circumstances, a defendant was possibly subject to maximum terms of imprisonment of one, ten, or twenty years. Tucker was subject

to sentencing under 18 U.S.C. § 2113(d) because of aggravating factors surrounding the commission of the crime and not his prior criminal record. Therefore, Tucker was not sentenced under a recidivist statute.

**11.** In *Burgett v. Texas,* 389 U.S. 109, 88 S.Ct. 258, 19 L.Ed.2d 319 (1967), the Supreme Court held that the principles underlying *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), prohibited, in sentencing under a recidivist statute, the use of prior convictions for which the defendant did not have counsel and where the records did not establish that he waived his right to counsel. *Burgett* and *Gideon* concerned the right to counsel guaranteed under the sixth amendment of the United States Constitution. The right is also guaranteed by article 1, section 14 of the Hawai'i State Constitution.

tence has been "enhanced" under the extended term sentencing provisions of the Hawai'i Penal Code. In *State v. Kamae*, 56 Haw. 628, 638, 548 P.2d 632, 639 (1976) the Hawai'i Supreme Court vacated the imposition of an extended term sentence under HRS § 706–662(4), the "multiple offender" section, because

> the record [was] glaringly deficient as it d[id] not show that appellant was represented by counsel during any of the alleged prior offenses of which he was convicted, or that he intelligently and voluntarily waived his constitutional right to counsel. "To permit a conviction obtained in violation of *Gideon v. Wainwright* to be used against a person either to support guilt or enhance punishment for another offense is to erode the principle of that case. Worse yet, since the defect in the prior conviction was denial of the right to counsel, the accused in effect suffers anew from the deprivation of that Sixth Amendment right." *Burgett v. Texas*, 389 U.S. 109, 115, 88 S.Ct. 258, 262, 19 L.Ed.2d 319 (1967). We have also agreed with the precept stated in *Carnley v. Cochran*, 369 U.S. 506, 516, 82 S.Ct. 884, 890, 8 L.Ed.2d 70 (1962), that "[p]resuming waiver of counsel from a silent record is impermissible." *Carvalho v. Olim*, 55 Haw. 336, 519 P.2d 892 (1974); *Wong v. Among*, 52 Haw. 420, 477 P.2d 630 (1970).

(Emphasis added.) (Some citations omitted.) Similarly in *State v. Morishige*, 65 Haw. 354, 652 P.2d 1119 (1982), involving an extended term sentence under the "persistent offender" provision of HRS § 706–662(1) and "multiple offender" provision of HRS § 706–662(4), the court held that "when *prior convictions are used to enhance the penalty for another offense,* the record in each case must show that the defendant was represented by counsel during the alleged prior offenses of which he [or she] was convicted, or that he

[or she] intelligently and voluntarily waived his constitutional right to counsel." *Id.* at 367, 652 P.2d at 1129 (emphasis added) (internal quotation marks, brackets, and ellipses omitted) (citing *Kamae*, 56 Haw. at 638, 548 P.2d at 639).

2.

We examine whether there is a similar bar to the use of uncounseled misdemeanor and petty misdemeanor convictions.

In *Argersinger v. Hamlin*, 407 U.S. 25, 37, 92 S.Ct. 2006, 2012, 32 L.Ed.2d 530 (1972), the United States Supreme Court held that "absent a knowing and intelligent waiver," the Sixth Amendment through the due process clause in the Fourteenth Amendment mandates that "no person may be *imprisoned* for any offense whether classified as petty, misdemeanor or felony, unless he [or she] was represented by counsel at [his or her] trial." (Emphasis added.) (Footnote omitted.) Concurring, Chief Justice Burger pointed out that a layperson was no less able to defend against lesser offenses than he or she would be able to defend against serious offenses:

> The issues that must be dealt with in a trial for a petty offense or a misdemeanor may often be simpler than those involved in a felony trial and yet be beyond the capability of a lay[person], especially when he [or she] is opposed by a law-trained prosecutor. There is little ground, therefore, to assume that a defendant, unaided by counsel, will be any more able adequately to defend himself [or herself] against the lesser charges that may involve confinement than more serious charges.

*Id.* at 41, 92 S.Ct. at 2014 (Burger, C.J., concurring). Later in *Scott v. Illinois*, 440 U.S. 367, 99 S.Ct. 1158, 59 L.Ed.2d 383 (1979), the Supreme Court affirmed that a defendant charged with a misdemeanor had the right to be represented by counsel only if he or she was *actually imprisoned,* and not otherwise.[12] *Scott* held that "actual impris-

---

12. This court has held that under article I, section 14 of the Hawai'i Constitution and HRS § 801–1 (1993), a criminal defendant is entitled to be represented by counsel in every case where the defendant is charged with a crime punishable by a term of imprisonment and not only where the defendant is actually imprisoned. *State v. Dowler*, 80 Hawai'i 246, 909 P.2d 574 (App.), *cert. granted*, 80 Hawai'i 187, 907 P.2d 773 (1995), *and cert. dismissed*, 80 Hawai'i 357, 910 P.2d 128 (1996). This applies to petty misdemeanors as well as to misdemeanors.

onment is the line defining the constitutional right to appointment of counsel [in misdemeanor cases]." *Id.* at 373, 99 S.Ct. at 1162. Hence, under the "actual imprisonment" standard of *Scott*, uncounseled convictions which did not result in imprisonment were considered constitutionally valid convictions.

In *Baldasar v. Illinois*, 446 U.S. 222, 226, 100 S.Ct. 1585, 1587, 64 L.Ed.2d 169 (1980) (per curiam) (Marshall, J., concurring), however, the Court indicated that such a conviction was invalid for the purpose of imposing a sentence of imprisonment on a subsequent conviction. While acknowledging that *Scott* stated that "an uncounseled misdemeanor conviction is constitutionally valid [if] the offender is not incarcerated[,]" the *Baldasar* plurality nevertheless held:

> The sentence petitioner actually received *would not* have been authorized by statute but for the previous conviction. It was imposed as a direct consequence of that uncounseled conviction and is therefore forbidden under *Scott* and *Argersinger.*

*Id.* at 227, 100 S.Ct. at 1588 (Marshall, J., concurring).

In *Baldasar*, the defendant was charged with theft under a statute that allowed a second theft offense to be treated as a felony punishable by a term of imprisonment of one to three years. Although *Baldasar* did not command a majority approach,[13] the plurality did agree that the right to counsel, as guaranteed by the Sixth Amendment, is violated when a defendant is sentenced to incarceration on a subsequent offense because of a prior uncounseled misdemeanor conviction. 446 U.S. at 224, 100 S.Ct. at 1586 (Stewart, J., concurring); *id.* at 225–26, 100 S.Ct. at 1586–87 (Marshall, J., concurring); *see also*

*Nichols v. United States*, —— U.S. ——, —— n. 1, 114 S.Ct. 1921, 1932 n. 1, 128 L.Ed.2d 745 (1994) (Blackmun, J., dissenting) (explaining that while he did not explicitly state so in his concurrence in *Baldasar*, he had no disagreement with the premise that an uncounseled conviction was invalid for purposes of imposing imprisonment for a subsequent offense).

As Justice Marshall explained in his concurrence, when a defendant is sentenced to imprisonment because of a prior conviction, the court is actually sentencing the defendant based on the first conviction because imprisonment is imposed as a direct consequence of that conviction. *Baldasar*, 446 U.S. at 227, 100 S.Ct. at 1587–88. Hence, "a rule that [holds] a conviction invalid for imposing a prison term directly, but valid for imposing a prison term collaterally, would be an illogical and unworkable deviation from ... previous cases." *Id.* at 228–29, 100 S.Ct. at 1588–89 (footnote omitted). The rationale supporting this approach is that "unless an accused has 'the guiding hand of counsel at every step in the proceedings against him,' his conviction is not sufficiently reliable to support the severe sanction of imprisonment." [14] *Id.* at 227–28, 100 S.Ct. at 1587–88 (quoting *Powell v. Alabama*, 287 U.S. 45, 69, 53 S.Ct. 55, 64, 77 L.Ed. 158 (1932) (citing *Argersinger*, 407 U.S. at 31–36, 92 S.Ct. at 2009–12)).

In *State v. Hoglund*, 71 Haw. 147, 152, 785 P.2d 1311, 1313 (1990), the Hawai'i Supreme Court, citing *Baldasar*, 446 U.S. 222, 100 S.Ct. 1585, held that because no sentence of imprisonment was imposed on the defendant's second conviction for Driving Under the Influence of Intoxicating Liquor (DUI), the State was not obligated to prove that a prior DUI conviction was counseled. *Ho-*

---

13. Four opinions were rendered in *Baldasar v. Illinois*, 446 U.S. 222, 100 S.Ct. 1585, 64 L.Ed.2d 169 (1980) (per curiam). Justice Stewart, Justice Marshall, and Justice Blackmun wrote separate concurring opinions. The opinions by Justice Stewart and Justice Marshall were joined by Justice Brennan and Justice Stevens. Justice Powell wrote a dissenting opinion that was joined by Chief Justice Burger, Justice White, and Justice Rehnquist.

14. Justice Marshall also noted that the *Argersinger* Court

recognized [that] misdemeanor convictions may actually be *less reliable* than felony convictions. "[T]he volume of misdemeanor cases may create an obsession for speedy dispositions, regardless of the fairness of the result.... 'Everything is rush, rush.' There is evidence of the prejudice which results to misdemeanor defendants from this 'assembly-line justice.' "
*Baldasar*, 446 U.S. at 228 n. 2, 100 S.Ct. at 1588 n. 2 (Marshall, J., concurring) (emphasis added) (footnote, citations, and ellipses omitted) (quoting *Argersinger v. Hamlin*, 407 U.S. 25, 34–36, 92 S.Ct. 2006, 2011–12, 32 L.Ed.2d 530 (1972)).

*glund* characterized *Baldasar* as meaning that "an 'uncounseled misdemeanor conviction'" was "not sufficiently reliable to support the severe sanction of imprisonment." *Id.* See also *State v. Nishi*, 9 Haw.App. 516, 527–28, 852 P.2d 476, 482 (1993) (State not required to show that the defendant was represented by counsel during his prior conviction where the defendant was not sentenced to any imprisonment for the instant offense). In *State v. Vares*, 71 Haw. 617, 621, 801 P.2d 555, 557 (1990), another misdemeanor DUI case, our supreme court stated that "[a]n uncounseled conviction cannot be used collaterally to support an enhanced sentence where such enhanced sentence includes a term of imprisonment." (Citing *Baldasar*, *supra*; *Kamae*, *supra*.) The *Vares* court concluded that because the defendant was not represented by counsel on a prior DUI misdemeanor conviction, he could not be subjected to the prison term mandated for a third DUI conviction. Thus, following the *Baldasar* approach, the appellate decisions in our jurisdiction have required proof that a prior misdemeanor conviction was counseled when used as a basis for imprisonment or an enhanced sentence of imprisonment.

*Baldasar, supra,* was later overruled by *Nichols*, 511 U.S. 738, 114 S.Ct. 1921. In *Nichols*, the Court held that a prior *uncounseled* misdemeanor conviction could be used as a basis for increasing the term of imprisonment under a recidivist statute. The Court explained that because a sentencing court might validly consider "the underlying conduct which gave rise" to the prior conviction, "it must be constitutionally permissible to consider a prior uncounseled misdemeanor conviction based on the same conduct[.]" 511 U.S. at ——, 114 S.Ct. at 1928.

*Nichols* has not yet been the subject of any appellate discussion in our jurisdiction. In the context of consecutive term sentencing, we choose not to follow the rationale in *Nichols, supra.* See *State v. Silva*, 78 Hawai'i 115, 121, 890 P.2d 702, 708 (App.1995) (Hawai'i appellate courts may interpret the state constitution to afford greater protection than the federal constitution). If an uncounseled misdemeanor conviction cannot result in imprisonment because of its unreliability

in the first place, it is logically inconsistent to rely on it as a basis to enhance a prison term on a subsequent conviction. Therefore, we see no reason to depart from the current rule in our jurisdiction which prohibits the use of an uncounseled misdemeanor conviction as a basis for the imposition or enhancement of a prison sentence.

Because the reliability of prior convictions is the linchpin for a sentencing court to consider such convictions, our holding, *infra*, must apply to uncounseled petty misdemeanors as well. We believe the controlling proposition is that in the absence of a valid waiver of counsel, an uncounseled conviction is not reliable for purposes of imposing or enhancing a sentence of imprisonment. We may be extending greater protection to an accused person than would the United States Supreme Court, but this is consistent with the Hawai'i Supreme Court's decision to "afford[ ] greater protection of [defendants'] right to effective assistance of counsel" under article I, section 14 of the Hawai'i Constitution. *State v. Aplaca*, 74 Haw. 54, 67 n. 2, 837 P.2d 1298, 1305 n. 2 (1992). We perceive no practical obstacle to this approach since our supreme court has already limited consideration of prior felony and misdemeanor convictions to counseled ones, where increased terms of imprisonment or imprisonment are sought to be imposed. See *Vares*, 71 Haw. at 621, 801 P.2d at 557; *Morishige*, 65 Haw. at 367, 652 P.2d at 1129.

### 3.

◼ We are not faced with a statute which requires or allows the imposition of an increased sentence because of prior convictions. Nevertheless, a defendant sentenced to consecutive terms will obviously be subject to a longer term of imprisonment than if the terms were to run concurrently. The situation here is similar to that in *Tucker*, where the sentencing court chose "to impose a heavier prison sentence than it otherwise [could] have imposed[,]" 404 U.S. at 446, 92 S.Ct. at 591, and "[t]he record ... makes evident that the sentencing judge gave specific consideration to the [defendant's] previous convictions[.]" *Id.* at 447, 92 S.Ct. at 592. We may be left "not with a

sentence imposed in the informed discretion of a [sentencing] judge, but with a sentence founded at least in part upon misinformation of constitutional magnitude." *Id.* We have concluded that, under our constitution, an uncounseled conviction is not reliable for purposes of sentencing. *See* discussion *supra.* We hold, then, that if a sentencing court gives consideration to the defendant's previous convictions in choosing to impose consecutive, rather than concurrent, terms of imprisonment, the court must ensure that any prior felony, misdemeanor, and petty misdemeanor conviction relied on was a counseled one. *See Tucker,* 404 U.S. at 447, 92 S.Ct. at 591–92.

4.

(DISSENTING OPINION)

ACOBA, Judge.

I disagree not only with the majority's basic proposition that Defendant be assigned the burden of raising a "good faith challenge" to the validity of a prior criminal conviction, Majority opinion at 50, but also with the underlying assumptions and methodology the majority employs.

Not every case justifies a sentence greater than would ordinarily be imposed, nor does every case require consideration of prior convictions in order to impose an enhanced sentence. Obviously, the State is usually the party which would seek consecutive term sentencing, or when the State does not request it, the court may impose such sentences in its discretion. However, the majority would require, presumably, at the risk of a claim of ineffective assistance of counsel, that defense counsel ascertain whether any "reported criminal conviction" in a pre-sentence report was uncounseled, by placing the burden on the defendant to make a "good faith challenge" on the record in anticipation of the possibility of the use of a prior criminal conviction in sentencing. Majority opinion at 445, 918 P.2d at 252. The majority does not explain how a "good faith challenge" could be made without requiring the defense to bear what the majority characterizes as "the enormity of the practical problem faced by the State in some cases." Majority opin-

ion at 441, 918 P.2d at 248. Indeed, the "good faith challenge" burden hoisted onto the defendant merely shifts the supposed "enormity of the practical problem" from the State to the defendant. Since it is ordinarily the State which seeks to subject the defendant to an enhanced sentence, then it is the State which would know in advance of sentencing, whether it will rely on prior convictions at the sentencing hearing, and if so, which ones. I see no gain achieved in first requiring a defendant to make a "good faith challenge" before the State is put to the task that it would have to undertake anyway. The State is obviously the only party which can define that part of a defendant's criminal record it will use to support its request for consecutive sentencing. Where the court does not agree with the plea bargain arrived at between the parties, as in the instant case, the court may refer the matter to the State or the probation department. The court may take it upon itself to establish the proper record through the department preparing the pre-sentence report. *See State v. Drozdowski,* 9 Haw.App. 583, 588, 854 P.2d 238, 241 (1993) (court may establish the basis for a mandatory minimum sentence).

On the other hand, I foresee a great deal of unnecessary time and expense engendered for both the State and the defense by the majority's proposal, since the effort the defense expends in satisfying its "good faith challenge" will ultimately have to be duplicated by the State in verifying the prior convictions it relies on, as it must because of our holding prohibiting reliance on uncounseled convictions. This means that, in the great majority of cases, the public will pay twice— first for the defense challenge, because the great majority of appeals are taken from the state-supported public defender's office, and second, for the prosecution's verification. It appears rational, logical, and efficient, to require the proponent of any evidence of a prior conviction to ascertain its validity and to carry the burden of going forward with proof in that regard. The administrative procedure for accomplishing this should be left in the first instance to the sentencing courts and the parties, since they are best able to ascertain the extent to which compliance with our holding is necessary in any

particular case. The majority's approach ignores the expertise, experience, and ingenuity of the bar, the trial courts, and probation officers, which can easily be brought to bear on any "problem."

Of course, I cannot agree with the majority's specter of "the enormity of the practical problem" which, with all due respect, appears to be simply a creation of its own making. As evidence of the "enormity of the problem," the majority refers to Defendant's criminal record. A focused view of any criminal record would reveal that not everything in the record can be considered (i.e., "no disposition," "dismissed," and "nolle prosequied" entries) and not every offense would be relevant and material to the consideration of whether consecutive, as opposed to concurrent prison sentences should be imposed. In its fear of the "enormity of the practical problem," the majority refers to the *entire* criminal record when our holding pertains only to the evaluation of prior *convictions* singled out as relevant. The majority also ignores the reality that the State and the court, through its probation office, as opposed to an individual defendant, have greater and easier access to law enforcement and court records. Ultimately, the administrative burden on the State of proving that the prior convictions relied on were counseled is minimal compared to the consequential effect on the prison sentence of a defendant—in this case, an additional ten years over the typical concurrent sentence of imprisonment.

More importantly, however, I question the fairness of requiring a defendant, in effect, to disprove the State's sentencing case. In the framework of HRS chapter 706, the burden is placed on the State to produce proof of the relevant prior convictions whenever prior convictions are used as a basis for an increased sentence. Ordinarily, the State would have the responsibility of presenting certified evidence that a prior conviction was a counseled one.[15] *See State v. Freitas*, 61 Haw. 262, 277, 602 P.2d 914, 925 (1979).

Placing the burden on the State is logically consistent with the fact that it is the State which seeks to enlarge an ordinary sentence, and thus, for the reasons of economy and fairness, it is the State which should come forward with proof of the validity of the relevant prior convictions.[16] To require otherwise shifts the burden of going forward with the proof onto the defendant, contrary to the Hawai'i Penal Code's procedural approach to the enlargement of ordinary sentences.[17]

15. I do not perceive of any difficulty in the sentencing court evaluating convictions rendered in other states. As Justice Brennan's dissent in *Scott v. Illinois*, 440 U.S. 367, 386 n. 18, 99 S.Ct. 1158, 1168 n. 18, 59 L.Ed.2d 383 (1979) long ago indicated, most states would require that counsel be made available where the defendant is subject to potential imprisonment. Twenty-two states agree with our jurisdiction that a defendant is entitled to counsel if imprisonment is authorized. *Id.* Eight other states' laws would provide counsel if imprisonment is authorized or, at the least, the offense is not "trivial." *Id.* Additionally, eight other states would provide counsel if the defendant is accused of a crime which is punishable with imprisonment between thirty days and six months. *Id.* at 387–88 nn. 19–21, 99 S.Ct. at 1169 nn. 19–21. The other states vest discretion to appoint counsel in various authorities or utilize a " 'likelihood of imprisonment' standard" in determining the issue of appointed counsel. *Id.* at 387 n. 18, 388 n. 22, 99 S.Ct. at 1168 n. 18, 1169 n. 22. As recently as 1994, the United States Supreme Court noted that "many if not a majority of States guarantee the right to counsel whenever imprisonment is authorized by statute, rather than actually imposed." *Nichols v. United*

*States*, 511 U.S. 738, —— n. 12, 114 S.Ct. 1921, 1928 n. 12, 128 L.Ed.2d 745 (1994).

16. HRS § 706–668.5 implicitly recognizes that concurrent terms would suffice to satisfy the objective of punishment. Thus, while consecutive term sentencing is not specifically placed in the enhanced sentencing framework, we have today acknowledged that consecutive terms will obviously subject a defendant to a longer and thus harsher term of imprisonment than if the terms were to run concurrently.

17. The majority's contention that the "defendant has no burden to produce any evidence" is inconsistent with the case law the majority relies on. *See State v. Triptow*, 770 P.2d 146, 148 (Utah 1989) (to rebut presumption of regularity afforded to convictions, defendant must produce *"some evidence* that counsel was not present and was not waived") (emphasis added). Inexplicably, the majority also relies on *Parke v. Raley*, 506 U.S. 20, 34, 113 S.Ct. 517, 525–26, 121 L.Ed.2d 391 (1992), which upheld Kentucky's "burden-shifting rule" procedure requiring the defendant to produce evidence that his or her rights were infringed under the federal constitution. Aside

The majority's faulty premise that "the defendant, more than anyone else, knows whether or not his or her prior criminal conviction was uncounseled, otherwise invalid, or irrelevant" has no support in the record. Majority opinion at 445, 918 P.2d at 252. Time and time again, the cases indicate that lay persons are typically unaware of the nature and import of court procedures. It is ironic that the majority adopts its premise in the face of the human experiences which belie it, embodied in the uncounseled conviction cases cited in the main opinion.

The procedure adopted by the majority raises serious questions about our holding. Our holding prohibits the use of uncounseled convictions under the Hawai'i Constitution's guarantee of the right to counsel. Under the presumptive approach adopted by the majority, a defendant's failure to raise an uncounseled conviction constitutes, in effect, a *waiver* of his state constitutional right to effective assistance of counsel, without provision for the required procedures for the knowing, voluntary and intelligent waiver of the right to counsel *and* permits the State to use such a conviction, *even if uncounseled,* in the sentencing process.

Finally, I also disagree with the methodology employed by the majority. The detailed sentencing procedure it adopts tracks a federal statute, 21 U.S.C.S. § 851 (1984). That statute was not raised in the record by any party. In my view, the procedure not only conflicts with the design of the sentencing provisions in the Hawai'i Penal Code but is a naked attempt to legislate. While the instant case involves only the imposition of consecutive sentences under HRS § 706-668.5, the majority, without any notice to the parties or warrant in the record, expands its holding to impose new sentencing procedures under HRS § 706-606.5, HRS § 706-660.1, and HRS § 706-620(3), provisions not at all involved in this case. We are not vested with our State's legislative power to create a new sentencing procedure in the Hawai'i Penal Code or with the rulemaking power of the

Hawai'i Supreme Court. We have no basis in the record for adopting such a procedure, nor for arrogating to ourselves the power to do so. Proof of a prior conviction is simple and straightforward and can be done sensibly. The majority's procedure unnecessarily complicates these matters, raising in its wake serious constitutional and statutory issues.

I would remand the case with instructions that Judge Spencer's sentence be affirmed if the convictions he referred to at Defendant's sentencing hearing are shown to be counseled ones. If this showing is not made, then I would require that Defendant be resentenced.

Opinion of the court by BURNS, Chief Judge, with respect to Part IV.B.4

For the foregoing reasons, we must remand the case. We will now discuss the situation where ordinary sentencing procedures and Hawai'i Revised Statutes (HRS) § 706-601 are applicable.

HRS § 701-107 (1993) states as follows:

**Grades and classes of offenses.** (1) An offense defined by this Code or by any other statute of this State for which a sentence of imprisonment is authorized constitutes a crime. Crimes are of three grades: felonies, misdemeanors, and petty misdemeanors. Felonies include murder in the first and second degrees, attempted murder in the first and second degrees, and the following three classes: class A, class B, and class C.

(2) A crime is a felony if it is so designated in this Code or if persons convicted thereof may be sentenced to imprisonment for a term which is in excess of one year.

(3) A crime is a misdemeanor if it is so designated in this Code or in a statute other than this Code which provides for a term of imprisonment the maximum of which is one year.

(4) A crime is a petty misdemeanor if it is so designated in this Code or in a statute

from the fact that the burden-shifting rule in *Parke*'s "persistent felony offender statute" is apparently directly contrary to the recidivist sentencing procedures in our jurisdiction, *see State v. Morishige,* 65 Haw. 354, 652 P.2d 1119 (1982);

*State v. Kamae,* 56 Haw. 628, 548 P.2d 632 (1976), we have in this opinion expressly parted company with the United States Supreme Court's position on the treatment to be given uncounseled convictions.

other than this Code enacted subsequent thereto, or if it is defined by a statute other than this Code which provides that persons convicted thereof may be sentenced to imprisonment for a term of which the maximum is less than one year.

(5) An offense defined by this Code or by any other statute of this State constitutes a violation if it is so designated in this Code or in the law defining the offense or if no other sentence than a fine, or fine and forfeiture or other civil penalty, is authorized upon conviction or if it is defined by a statute other than this Code which provides that the offense shall not constitute a crime. A violation does not constitute a crime, and conviction of a violation shall not give rise to any civil disability based on conviction of a criminal offense.

(6) Any offense declared by law to constitute a crime, without specification of the grade thereof or of the sentence authorized upon conviction, is a misdemeanor.

(7) An offense defined by any statute of this State other than this Code shall be classified as provided in this section and the sentence that may be imposed upon conviction thereof shall hereafter be governed by this Code.

HRS § 706–663 (1993) states as follows:

**Sentence of imprisonment for misdemeanor and petty misdemeanor.** After consideration of the factors set forth in sections 706–606 [factors to be considered in imposing a sentence] and 706–621 [factors to be considered in imposing a term of probation], the court may sentence a person who has been convicted of a misdemeanor or a petty misdemeanor to imprisonment for a definite term to be fixed by the court and not to exceed one year in the case of a misdemeanor or thirty days in the case of a petty misdemeanor.

In the United States and in some states other than Hawai'i, an indigent charged with a crime for which imprisonment is authorized but not imposed has no right to appointed counsel. *Scott v. Illinois*, 440 U.S. 367, 99 S.Ct. 1158, 59 L.Ed.2d 383 (1979). Hawai'i is different. Article I, section 14 of the Hawai'i Constitution states in relevant part that

"[t]he State shall provide counsel for an indigent defendant charged with an offense punishable by imprisonment."

HRS § 802–1 (1993) states in relevant part that

[a]ny indigent person who is (1) arrested for, charged with or convicted of an offense or offenses punishable by confinement in jail or prison ... shall be entitled to be represented by a public defender. If, however, conflicting interests exist, or if the public defender for any other reason is unable to act, or if the interests of justice require, the court may appoint other counsel.

■ A criminal conviction of an indigent defendant is an uncounseled criminal conviction where the defendant was not provided with the services of the public defender or appointed counsel, the requirements of *State v. Dickson,* 4 Haw.App. 614, 619–20, 673 P.2d 1036, 1041 (1983), were not satisfied, and the defendant did not (i) waive, or (ii) waive by conduct, his or her right to the services of the public defender or appointed counsel, or the defendant did not forfeit his or her right to the services of the public defender or appointed counsel. *United States v. Goldberg,* 67 F.3d 1092 (CA 3, 1995); *State v. Dickson, supra.*

A "waiver" is the defendant's intentional and voluntary relinquishment of a known right. A "waiver by conduct" or "implied waiver" occurs when, after defendant has been warned that he or she will lose the right in the event of subsequent neglect or misconduct, the subsequent neglect or misconduct occurs. A "waiver" or a "waiver by conduct" cannot occur before the *Dickson* requirements have been satisfied. A "forfeiture" is the defendant's loss of a right by extremely serious misconduct, regardless of the defendant's knowledge of the right and irrespective of whether the *Dickson* requirements have been satisfied or defendant intended to relinquish the right. *United States v. Goldberg, supra.*

■ A criminal conviction of a non-indigent defendant is an uncounseled conviction where the defendant was not represented by counsel, the requirements of *State v. Dick-*

*son, id.,* were not satisfied, and the defendant did not (i) waive, or (ii) waive by conduct, his or her right to the assistance of counsel, or the defendant did not forfeit his or her right to the assistance of counsel.

In Defendant's case, the situation is as follows. Defendant was being sentenced in Hawaiʻi for three felonies.[18] His extensive record of prior convictions entered in Hawaiʻi and states other than Hawaiʻi were relevant to his sentencing. In this case, Defendant is indigent. However, he may or may not have been indigent when each of his prior criminal convictions occurred. The record does not indicate that Defendant's prior criminal convictions were not uncounseled convictions. Defendant contends that because the State failed to prove that the prior criminal convictions relied on by the trial judge in sentencing him to consecutive terms of imprisonment were not uncounseled and otherwise valid, his sentence must be set aside. However, Defendant did not in the circuit court, and does not in this appeal, challenge the validity of any of the prior convictions listed in the presentence report.

In Hawaiʻi, prior criminal convictions are relevant in no less than the following situations: (1) under HRS § 706–662(1) pertaining to extended terms of imprisonment; (2) under HRS § 706–606.5 pertaining to mandatory minimum terms of imprisonment; (3) under HRS § 706–660.1 pertaining to mandatory minimum terms of imprisonment in cases involving firearms; (4) under HRS § 706–620(3) pertaining to eligibility for probation; and (5) under HRS § 706–668.5 per-

taining to consecutive sentences of imprisonment.

There is a substantial difference between situation (1) (extended terms) and situation (2) (mandatory minimums). With respect to situation (1) (extended terms), HRS § 706–664 (1993) states as follows:

**Procedure for imposing extended terms of imprisonment.** Hearings to determine the grounds for imposing extended terms of imprisonment may be initiated by the prosecutor or by the court on its own motion. The court shall not impose an extended term unless the ground therefor has been established at a hearing after the conviction of the defendant and on written notice to the defendant of the ground proposed. Subject to the provisions of section 706–604, the defendant shall have the right to hear and controvert the evidence against the defendant and to offer evidence upon the issue.

In *State v. Kamae,* 56 Haw. 628, 548 P.2d 632 (1976), the Hawaiʻi Supreme Court "held that the extended term sentence hearing was a separate criminal proceeding apart from the trial of the underlying substantive offense; the ordinary rules of evidence apply; and all issues relevant to the determination of whether an extended term should be imposed must be established by the State beyond a reasonable doubt." *State v. Drozdowski,* 9 Haw.App. 583, 585, 854 P.2d 238, 239–40 (1993). The court further held that "the [circuit] court erred when it admitted into evidence the presentence report over the objection of the appellant." *Kamae,* 56 Haw. at 638, 548 P.2d at 639 (citations omitted).

**18.** The Opening Brief describes the offenses as follows:

Defendant expressed his remorse for the offenses and explained that the present offenses arose from a domestic dispute between Defendant and his then-girlfriend, Rosemarie Petelo (Petelo). After he was laid off from his job, he and Petelo moved to her mother's house on Oahu [Oʻahu]. After living with Petelo's mother for awhile, Defendant and Petelo began arguing and, on one occasion, he hit her and threatened her with a knife. (Count I). He had been drinking at the time. After they both calmed down, they went home and Petelo called the police. The police questioned Defendant outside of the home and told him to leave but did not arrest him. Petelo refused to

return all of Defendant's belongings to him left. [sic] Defendant left but continued drinking and kept calling Petelo on the telephone. They were very angry at each other, argued and threatened each other on the phone. (Count II). When Petelo went out several days later, she had her phone calls transferred to her landlord's phone (Ms. Kaaiawaawa). When Defendant called Petelo's home, the landlord answered and Defendant argued with her about Petelo and threatened her. (Count III). (Transcript citations omitted.)

The Presentence Diagnosis and Report describes the offenses as being more serious and aggravated than described in the Opening Brief.

In contrast, in the situation (2) (mandatory minimums) context, the Hawai'i Supreme Court held in *State v. Freitas,* 61 Haw. 262, 276, 602 P.2d 914, 925 (1979), that proof of a prior conviction may consist of any evidence that reasonably satisfies the sentencing court that the defendant was convicted. In other words, it "held that ordinary sentencing procedures apply to the mandatory minimum sentence hearing." *State v. Drozdowski, supra.*

In the absence of a legislative mandate similar to HRS §§ 706–662 and –664 establishing the criteria and procedure for imposing extended terms and in light of the other statutes establishing ordinary sentencing procedures applicable in contexts other than extended terms, we hold that ordinary sentencing procedures apply to situation (5) hearings to decide whether to impose a concurrent or a consecutive sentence.

What are ordinary sentencing procedures? *State v. Drozdowski, supra,* and the following HRS (1993) sections are relevant.

**§ 706–600 Sentence in accordance with this chapter.** No sentence shall be imposed otherwise than in accordance with this chapter.

**§ 706–601 Pre-sentence diagnosis and report.** (1) The court shall order a pre-sentence correctional diagnosis of the defendant and accord due consideration to a written report of the diagnosis before imposing sentence where:

(a) The defendant has been convicted of a felony; or

(b) The defendant is less than twenty-two years of age and has been convicted of a crime.

(2) The court may order a pre-sentence diagnosis in any other case.

(3) With the consent of the court, the requirement of a pre-sentence diagnosis may be waived by agreement of both the defendant and the prosecuting attorney.

**§ 706–602 Pre-sentence diagnosis, notice to victims, and report.** (1) The pre-sentence diagnosis and report shall be made by personnel assigned to the court, intake service center or other agency designated by the court and shall include:

(a) An analysis of the circumstances attending the commission of the crime;

(b) The defendant's history of delinquency or criminality, physical and mental condition, family situation and background, economic status and capacity to make restitution or to make reparation to the victim or victims of the defendant's crimes for loss or damage caused thereby, education, occupation, and personal habits;

(c) Information made available by the victim or other source concerning the effect that the crime committed by the defendant has had upon said victim, including but not limited to, any physical or psychological harm or financial loss suffered;

(d) Information concerning defendant's compliance or non-compliance with any order issued under section 806–11; and

(e) Any other matters that the reporting person or agency deems relevant or the court directs to be included.

(2) The court personnel, service center, or agency shall give notice of the Criminal Injuries Compensation Act, the application for compensation procedure, and the possibility of restitution by the defendant to all victims of the convicted defendant's criminal acts.

\*    \*    \*    \*    \*    \*

**§ 706–604 Opportunity to be heard with respect to sentence; notice of pre-sentence report; opportunity to controvert or supplement; transmission of report to department.** (1) Before imposing sentence, the court shall afford a fair opportunity to the defendant to be heard on the issue of the defendant's disposition.

(2) The court shall furnish to the defendant or the defendant's counsel and to the prosecuting attorney a copy of the report of any pre-sentence diagnosis or psychological, psychiatric, or other medical examination and afford fair opportunity, if the defendant or the prosecuting attorney so requests, to controvert or supplement them.

(3) In all circuit court cases, the court shall afford a fair opportunity to the victim to be heard on the issue of the defendant's disposition, before imposing sentence. . . . In the case of a homicide or where the victim is otherwise unable to appear at the sentencing hearing, the victim's family shall be afforded the fair opportunity to be heard.

\*     \*     \*     \*     \*     \*

**§ 706–665   Former conviction in another jurisdiction.** For purposes of sections 706–606.5 [mandatory minimums], 706–620 [eligibility for probation], and 706–662(1) [extended terms], a conviction of the commission of a crime in another jurisdiction shall constitute a previous conviction. Such conviction shall be deemed to have been of a felony if sentence of death or of imprisonment in excess of one year was authorized under the law of such other jurisdiction. Such a conviction shall be graded, for purposes of section 706–620 by comparing the maximum imprisonment authorized under the law of such other jurisdiction with the maximum imprisonment authorized for the relevant grade of felony.

**§ 706–666   Definition of proof of conviction.** (1) An adjudication by a court of competent jurisdiction that the defendant committed a crime constitutes a conviction for purposes of sections 706–606.5 [mandatory minimums], 706–662 [extended terms], and 706–665 [conviction in another jurisdiction], although sentence or the execution thereof was suspended, provided that the defendant was not pardoned on the ground of innocence.

(2) Prior conviction may be proved by any evidence, including fingerprint records made in connection with arrest, conviction, or imprisonment, that reasonably satisfies the court that the defendant was convicted.

In *State v. Kamae,* 56 Haw. at 637, 548 P.2d at 638 (citations omitted), the Hawai'i Supreme Court stated in relevant part as follows:

In an ordinary term sentencing proceeding, a sentencing judge customarily relies upon information furnished to him in a presentence diagnosis and report. *State v. Nobriga,* 56 Haw. 75, 527 P.2d 1269 (1974);

*Williams v. New York,* 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949). In *State v. Nobriga, supra,* we were faced with whether a sentencing judge may consider an adult offender's juvenile record contained in a presentence diagnosis and report. We there held that in a sentencing process, where the judge is no longer concerned with determining factual issues on guilt or innocence, he may consider such relevant information, including juvenile court record which is contained in a presentence report. Likewise, in *Williams v. New York, supra,* the court held that a sentencing court may acquire information about a defendant from any source, including any data contained in a presentence report, and utilize the same in the sentencing of a defendant without violating due process.

In *State v. Afong,* 61 Haw. 281, 282–83, 602 P.2d 927, 929 (1979) (citations omitted), the Hawai'i Supreme Court held, in the situation (2) (mandatory minimums) context, that "[u]nless conceded by the defendant, the state is required to show, by evidence satisfactory to the court, . . ., the fact of the defendant's prior conviction as well as the fact of his representation by counsel, or the waiver thereof, at the time of his prior conviction."

Subsequently, in *State v. Morishige,* 65 Haw. 354, 369, 652 P.2d 1119, 1130 (1982), the Hawai'i Supreme Court held that, in situations where the State seeks to prove a defendant's prior counseled criminal conviction, the trial court errs when it denies the defendant the opportunity to prove that his or her counsel was ineffective.

Both *Afong* and *Morishige* dealt solely with prior criminal convictions entered in Hawai'i and did not involve prior criminal convictions entered in other jurisdictions. Moreover, *Afong* dealt with the burden of proof, not with the burden of challenging.

Defendant's case is an example of the enormity of the practical problem faced by the State in some cases. The Presentence Diagnosis and Report (Presentence Report) given to the circuit court by its Adult Probation Division alleges in relevant part as follows:

Adult Record:

Record: X
Sources of information: OBTS, NCIC, Monroe County, Florida Probation records

Farmington Hill, Michigan

| | |
|---|---|
| 08/17/74 | Burglary |
| 09/06/74 | Convicted (No further disposition listed) |
| 12/07/74 | Weapons Offense (No disposition listed) |
| 04/12/75 | Damage to Property (No disposition listed) |

Racine, Wisconsin

| | |
|---|---|
| 04/18/77 | Theft From Building |
| 05/02/77 | 30 days County Jail; fined $75 |
| 07/03/77 | Possession of Marijuana |
| 07/05/77 | One year probation |

Aurora, Colorado

| | |
|---|---|
| 01/01/78 | Resisting Officer (No disposition listed) |

Wheatridge, Colorado

| | |
|---|---|
| 01/14/78 | Harassment (No disposition listed) |

Farmington Hill, Michigan

| | |
|---|---|
| 02/07/79 | Obstructing Police (No disposition listed) |

Hollywood, Florida

| | |
|---|---|
| 01/04/82 | Aggravated Assault |
| 01/27/82 | Three years probation |
| 01/21/92 | Probation revoked; sentenced to six months County Jail |

East Lansing, Michigan

| | |
|---|---|
| 10/25/83 | Stolen Property Assault (No disposition listed) |

Virginia Beach, Virginia

| | |
|---|---|
| 04/24/86 | Possession of Marijuana |
| 04/24/86 | Convicted |

Teller County, Colorado

| | |
|---|---|
| 08/03/86 | Driving Under the Influence Driving With Excessive Alcohol |
| 10/15/87 | Bench warrant issued |
| 08/19/86 | Assault in the Second Degree NP |
| 08/19/86 | Assault in the Third Degree |
| 10/15/87 | Bench warrant issued |

Woodland Park, Colorado

| | |
|---|---|
| 12/21/86 | Disorderly Conduct Obstructing Justice by Witness Intimidation Resisting Officer Menacing (Felony) (No disposition listed) |
| 01/25/87 | Trespass Drunk/Disorderly |
| 07/21/87 | Summons issued |

Teller County, Colorado

| | |
|---|---|
| 02/06/87 | Assault in the Second Degree |
| 02/06/87 | Five days County Jail |
| 03/11/87 | DWLS |
| 10/15/87 | Bench warrant issued |

Manitou Springs, Colorado

| | |
|---|---|
| 08/09/87 | Possession of an Unlicensed Firearm Possession of Unlicensed Brass Knuckles Attempt Sale of Unlicensed Firearm Attempt Sale of Unlicensed Brass Knuckles (No disposition listed) |

Phoenix, Arizona

| | |
|---|---|
| 01/08/88 | Shoplifting |
| 01/09/88 | One day County Jail |
| 03/27/88 | Shoplifting (No disposition listed) |

Isle of Palms, South Carolina

| | |
|---|---|
| 07/12/88 | Open Container Possession of Paraphernalia |
| 07/12/88 | Five days County Jail |

Phoenix, Arizona

| | |
|---|---|
| 08/28/88 | Assault |
| Unk. Date | Three days jail |
| 08/28/88 | Disorderly Conduct |
| Unk. Date | One day jail |

Monroe County, Florida

| | |
|---|---|
| 10/27/89 | Possession of Cocaine |
| 01/07/92 | Convicted as charged and sentenced to five years probation; 60 days public service; $1,297.50 restitution; $200 court costs; $25 Bureau of Crimes Compensation costs; $100 drug surcharge |

| | |
|---|---|
| 10/27/89 | Solicitation to Sell Cocaine |
| 01/07/92 | Nolle prosequi |

Tybee Island, Georgia

| | |
|---|---|
| 05/12/90 | Possession of Marijuana Carrying Concealed Weapon |
| Unk. Date | 30 days County Jail |

Coweta County, Georgia

| | |
|---|---|
| 07/18/90 | Theft by Taking |
| 09/17/90 | Convicted of Theft by Taking and Sentenced to five years Georgia State Prison followed by 48 months probation |
| 10/29/90 | Released to Conditional Supervision |
| 07/17/91 | Released to probation |
| 07/18/90 | Possession of Firearm by Convicted Felon Carrying Concealed Weapon |
| 09/17/90 | Nolle Prosequi |
| 12/1/90 | Battery |
| Unk. Date | Convicted; CTS |
| 12/20/90 | Battery |
| Unk. Date | Convicted; CTS; defendant to transfer conditional supervision to Texas |

Hilo, HI

| | |
|---|---|
| 11/25/92 | Shoplifting (D–99317) |
| 02/22/93 | Dismissed without prejudice |

Honolulu, HI

| | |
|---|---|
| 02/12/93 | Criminal Contempt of Court (93–059651) |
| 02/14/93 | Released, no charge |
| 02/12/93 | Terroristic Threatening in the First Degree (93–048802) |
| 02/24/93 | Complaint filed for Count I: Terroristic Threatening in the First Degree |
| 08/09/93 | Pleaded guilty as charged (Present Matter—Criminal Number 93–0421) |

| | |
|---|---|
| 02/12/93 | Terroristic Threatening in the First Degree (93–049677) |
| 02/24/93 | Complaint filed for Count II: Terroristic Threatening in the First Degree |
| 08/09/93 | Pleaded Nolo Contendere as charged (Present Matter—Criminal Number 93–0421) |
| 02/12/93 | Terroristic Threatening in the First Degree (93–061692) |
| 02/24/93 | Complaint filed for Count III: Terroristic Threatening in the First Degree |
| 08/09/93 | Pleaded Nolo Contendere as charged (Present Matter—Criminal Number 93–0421) |

Presentence Diagnosis and Report at 5–8.

A sentencing judge may not use as a basis for the imposition or enhancement of a prison sentence a prior criminal conviction that was (1) uncounseled,[19] (2) otherwise invalidly entered, or (3) not against the defendant.

Although the Presentence Report alleges that Defendant had an extensive history of criminal convictions, it is silent on the question of whether Defendant's alleged prior criminal convictions (convictions of offenses punishable by a sentence of imprisonment) were not uncounseled. We do not know whether the data sources expressly relied upon contain the relevant information. If such information is not readily available, a great deal of work by either the prosecutor's office or probation office would be required to obtain such information.

At sentencing, although Defendant's counsel made corrections to the September 27, 1993 Presentence Report, he did not contend that any of the listed prior criminal convic-

**19.** This rule that a sentencing judge may not use a prior uncounseled criminal conviction as a basis for the imposition or enhancement of a prison sentence is a rule that a sentencing judge may use a prior uncounseled criminal conviction as a basis for the imposition or enhancement of other sentences.

In *State v. Dowler*, 80 Hawai'i 246, 909 P.2d 574 (App.1995), we held that

[t]he right to counsel, guaranteed by the Sixth Amendment of the United States Constitution and article I, section 14 of the Hawai'i Constitution, encompasses two rights: (1) the right of a defendant, in "all criminal prosecutions," to be represented by privately retained counsel;

and (2) the right of an indigent criminal defendant to the assistance of counsel appointed to represent him or her.

Thus, in Hawai'i, all uncounseled criminal convictions are invalid.

We recognize the historical reasons for the rule that a sentencing judge may not use a prior uncounseled criminal conviction as a basis for the imposition or enhancement of a prison sentence. However, in light of the fact that all uncounseled criminal convictions are invalid, we conclude that it is time for a rule that a sentencing judge may not use a prior uncounseled criminal conviction as a basis for the imposition or enhancement of any sentence.

tions were uncounseled, were otherwise invalidly entered, or were not against Defendant. That fact leads to the question of whether a defendant has any burden to challenge the prior criminal conviction or convictions listed on the presentence report which the defendant contends is or are invalid. Our answer is yes.

On the question of the burdens imposed on each of the parties, the Utah Supreme Court's research in *State v. Triptow,* 770 P.2d 146 (Utah 1989) revealed the following:

> Our own research has shown that a number of state courts have considered the question ... who bears the burden of proof on the issue of representation or waiver of counsel in prior proceedings leading to a conviction that is used to increase the penalty in a subsequent prosecution[.] Among those states, we have identified at least three divergent views on the question. A significant factor is the degree to which the courts focus on the presumption of regularity that attends any judgment which has not been appealed from. Some courts are of the view that after the state proves the fact of a defendant's prior conviction, this presumption of regularity requires that the defendant prove, by a preponderance of the evidence, that there was an actual lack of representation without a knowing waiver of counsel in the earlier proceeding. A second group

of courts takes the position advocated by Triptow, which is to effectively disregard the presumption of regularity and require as an initial matter that the state affirmatively prove by at least a preponderance of the evidence either that the defendant was represented by counsel or that he or she knowingly waived counsel. A third group of courts takes a middle position. They acknowledge the presumption of regularity but allow the defendant to rebut that presumption by merely raising the issue and producing some evidence that counsel was not present and was not waived. This is enough to shift the burden to the state to affirmatively prove either representation or waiver by at least a preponderance of the evidence.

*Id.* at 148 (citations and footnote omitted).

As noted above, *State v. Kamae, supra,* imposes a heavy burden on the State in situation (1) (extended terms) hearings.

■■■ With respect to ordinary sentencing situations such as (2) (mandatory minimums), (3) (mandatory minimums/firearms), (4) (eligibility for probation), and (5) (consecutive sentences), we approve of the essence of the middle position taken by *Triptow*'s third group of courts.[20] After the sentencing judge has been informed pursuant to HRS § 706–601, –602 (1993) or otherwise of defendant's prior criminal conviction or convic-

---

20. Under Kentucky law, a defendant charged as a persistent felony offender may challenge prior convictions that form the basis of the charge on the ground that they are invalid. When a defendant challenges a previous conviction through a suppression motion, Kentucky must prove the existence of the judgment on which it intends to rely. Once this is done, a presumption of regularity attaches, and the burden shifts to the defendant to produce evidence that his rights were infringed or some procedural irregularity occurred in the earlier proceeding. If the defendant refutes the presumption of regularity, the burden shifts back to the government affirmatively to show that the underlying judgment was entered in a manner that did, in fact, protect the defendant's rights. Raley moved to suppress evidence of two convictions on the ground that the records did not contain transcripts of the plea proceedings and hence did not affirmatively show that his guilty pleas were knowing and voluntary. In *Parke v. Raley,* 506 U.S. 20, 113 S.Ct. 517, 121 L.Ed.2d 391 (1992), Raley filed a federal habeas petition, arguing that the Ken-

tucky courts had erred in requiring him to adduce evidence, rather than requiring Kentucky affirmatively to prove the prior convictions' validity. The United States Supreme Court affirmed Kentucky's procedure and stated in relevant part as follows:

> In sum, neither our precedents nor historical or contemporary practice compel the conclusion that Kentucky's burden-shifting rule violates due process, and we cannot say that the rule is fundamentally unfair in its operation. Accordingly, we hold that the Due Process Clause permits a State to impose a burden of production on a recidivism defendant who challenges the validity of a prior conviction under [*Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969)* (reversible error occurs when a trial judge accepted a defendant's guilty plea without creating a record affirmatively showing that the plea was knowing and voluntary) ].

*Parke v. Raley,* 506 U.S. at 34, 113 S.Ct. at 525–26, 121 L.Ed.2d at 406.

tions, each conviction listed may be used against defendant except those as to which the defendant timely responds with a good faith challenge on the record that the prior criminal conviction was (1) uncounseled, (2) otherwise invalidly entered, and/or (3) not against the defendant. We emphasize, however, that the defendant has no burden to produce any evidence.

As we have noted above, the rationale for not allowing the consideration of an uncounseled criminal conviction as a basis for the imposition or enhancement of a prison sentence is its lack of reliability. In our view, if the presentence report states that the defendant has a prior criminal conviction and the defendant does not respond to that report with a good faith challenge on the record that the reported criminal conviction was (1) uncounseled, (2) otherwise invalidly entered, or (3) not against the defendant, that prior criminal conviction is reliable for all sentencing purposes. We agree with *Triptow* that the defendant, more than anyone else, knows whether or not his or her prior criminal conviction was uncounseled, otherwise invalid, or irrelevant.

The Commentary on HRS § 706–602 supports our decision. It states in relevant part as follows:

This section sets forth the topics required to be covered in the pre-sentence investigation and report. The Code recog-

nizes that these topics constitute a minimum of the information which should be before the sentencing judge. Additional matters may be included by the pre-sentence investigator. A defendant is protected against the inclusion of unfounded facts, derogatory information, statements and conclusions by the provision of § 706–604 providing for notice and opportunity to controvert.

Our position is also supported by the federal law pertaining to Drug Abuse Prevention and Control, 21 U.S.C.S. § 851 (1984),[21] which relates to non-discretionary increased punishment for prior offenses under that specific law. 21 U.S.C.S. § 851 states in relevant part as follows:

**Proceedings to establish previous convictions**

**(a) Information filed by United States Attorney.**

(1) No person who stands convicted of an offense under this part [21 U.S.C.S. §§ 841 et seq.] shall be sentenced to increased punishment by reason of one or more prior convictions, unless ... the United States attorney files an information with the court (and serves a copy of such information on the person or counsel for the person) stating in writing the previous convictions to be relied upon.... Clerical mistakes in the information may be amended at any

---

21. At the federal level, sentencing for offenses other than those under 21 U.S.C.S. § 851 is generally governed by the Sentencing Guidelines for the United States Courts, 18 U.S.C.S. Appx. (1995 Cum.Supp.). These guidelines specify the sentence to be imposed for a particular offense but permit a court to depart from the guidelines if it finds "an aggravating or mitigating circumstance ... that should result in a sentence different from that prescribed." 18 U.S.C.S. Appx. § 1A 4(b) (1995 Cum.Supp.).

Aggravating circumstances resulting in an upward departure of a sentence include a defendant's prior criminal history, and 18 U.S.C.S. Appx. § 4 sets forth the formula for calculating the points to be added to a defendant's prescribed sentence. As a result of a defendant's prior criminal history, for example, three points are added to a defendant's current sentence category for each sentence of imprisonment previously imposed on defendant which exceeded one year and one month. 18 U.S.C.S. Appx. § 4A1.1 (1995 Cum.Supp.).

The Commentary to 18 U.S.C.S. Appx. § 4A1.2, which provides definitions and instructions for computing a defendant's criminal history, notes that sentences resulting from reversed, vacated, or invalidated convictions are not to be counted in determining a defendant's prior criminal history. However, the Commentary also notes:

With respect to the current sentencing proceeding, this guideline or commentary does not confer upon the defendant any right to attack collaterally a prior conviction or sentence beyond any such rights otherwise recognized in law (e.g. 21 U.S.C. § 851 expressly provides that a defendant may collaterally attack certain prior convictions).

As a general rule, then, a defendant in federal court may not use a sentencing hearing to collaterally attack the constitutionality of a prior conviction or sentence which appears on a presentence report. The conviction and sentence are presumed valid.

time prior to the pronouncement of sentence.

\* \* \* \* \* \* ·

**(b) Affirmation or denial of previous conviction.** If the United States attorney files an information under this section, the court shall ... inquire of the person with respect to whom the information was filed whether he affirms or denies that he has been previously convicted as alleged in the information, and shall inform him that any challenge to a prior conviction which is not made before sentence is imposed may not thereafter be raised to attack the sentence.

**(c) Denial; written response; hearing.** (1) If the person denies any allegation of the information of prior conviction, or claims that any conviction alleged is invalid, he shall file a written response to the information. A copy of the response shall be served upon the United States attorney....

(2) A person claiming that a conviction alleged in the information was obtained in violation of [his or her constitutional rights] shall set forth his claim, and the factual basis therefore, with particularity in his response to the information.... Any challenge to a prior conviction, not raised by response to the information before an increased sentence is imposed in reliance thereon, shall be waived unless good cause be shown for failure to make a timely challenge.

**(d) Imposition of sentence.** (1) If the person files no response to the information, or if the court determines, after hearing, that the person is subject to increased punishment by reason of prior convictions, the court shall proceed to impose sentence upon him as provided by this part.

■ When the defendant responds to a presentence report of the defendant's prior criminal conviction with a good faith challenge on the record that the prior criminal conviction was (1) uncounseled, (2) otherwise invalidly entered, and/or (3) not against the defendant, that prior criminal conviction may not be considered by the court as a basis for the imposition or enhancement of a prison sentence unless and until the State satisfies its burden of proving to the reasonable satis-

faction of the court that the opposite of the challenge is true.

■ As we noted in *State v. Drozdowski*, 9 Haw.App. at 588, 854 P.2d at 241, Rule 1101, Hawai'i Rules of Evidence (HRE), chapter 626, HRS, specifies that the HRE do not apply to sentencing proceedings. On the other hand, the Supreme Court in *United States v. Tucker*, 404 U.S. 443, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972), clearly distinguished between a sentencing judge's misinformation about other matters and a sentencing judge's misinformation about constitutionally invalid prior criminal convictions. As we have noted above, it described the latter as "misinformation of constitutional magnitude." *Id.* at 447, 92 S.Ct. at 592. This distinction leads us to conclude that, after the defendant validly challenges the validity of a reported prior conviction and the State attempts to prove that the opposite of the challenge is true, the sentencing court is not permitted to consider evidence that is not admissible under the HRE.

Under the HRE, records of prior criminal convictions contained in public records and reports that qualify under the HRE Rule 803(b)(8) public records and reports exception to the hearsay rule and satisfy the authentication and identification requirements of HRE Rule 901(7) or (8) or 28 U.S.C.S. § 1738 (1989) are prima facie evidence of valid prior criminal convictions.

28 U.S.C.S. § 1738 provides in relevant part as follows:

**State and Territorial statutes and judicial proceedings; full faith and credit**

\* \* \* \* \* \*

The records and judicial proceedings of any court of any ... State, Territory or Possession, or copies thereof, shall be proved or admitted in other courts within the United States and its Territories and Possessions by the attestation of the clerk and seal of the court annexed, if a seal exists, together with a certificate of a judge of the court that the said attestation is in proper form.

Such ... judicial proceedings or copies thereof, so authenticated, shall have the

same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken.

Therefore, we conclude that, henceforth, the following are the steps to be taken by Hawaiʻi courts in cases where ordinary sentencing procedures are applicable and there is a possibility that the court may use the defendant's prior conviction(s) as a basis for the imposition or enhancement of a prison sentence. Step one, the court shall furnish to the defendant or defendant's counsel and to the prosecuting attorney a copy of the presentence report, HRS § 706–604, and any other report of defendant's prior criminal conviction(s). Step two, if the defendant contends that one or more of the reported prior criminal convictions was (1) uncounseled, (2) otherwise invalidly entered, and/or (3) not against the defendant, the defendant shall, prior to the sentencing, respond with a good faith challenge on the record stating, as to each challenged conviction, the basis or bases for the challenge. Step three, prior to imposing the sentence, the court shall inform the defendant that (a) each reported criminal conviction that is not validly challenged by the defendant is defendant's prior, counseled, validly entered, criminal conviction, and (b) a challenge to any reported prior criminal conviction not made by defendant before sentence is imposed may not thereafter, absent good cause, be raised to attack the court's sentence. Step four, with respect to each reported prior criminal conviction that the defendant challenges, the HRE shall apply, and the court shall expressly decide before the sentencing whether the State satisfied its burden of proving to the reasonable satisfaction of the court that the opposite of the defendant's challenge is true. Step five, if the court is aware of the defendant's prior uncounseled or otherwise invalid criminal conviction(s), it shall not impose or enhance a prison sentence prior to expressly stating on the record that it did not consider it or them as a basis for the imposition or enhancement of a prison sentence.

CONCLUSION

Accordingly, we remand the case. Step one has been taken. If Defendant does not validly challenge, in accordance with step two, the validity of any of the prior criminal convictions reported in the Presentence Report, the sentence is affirmed. If, in accordance with step two, Defendant validly challenges the validity of any of the reported prior criminal convictions, the sentence is vacated, and the circuit court and the parties shall proceed on to steps three, four, and five.