**STATE OF HAWAI'I**, Plaintiff–Appellee, v. **MICHAEL AKIO NISHI**, Defendant–Appellant

NO. 15709

(TRAFFIC NOS. B 12A, B 10A, B 14A 286–25, OF 10/9/91)

MAY 21, 1993[*]

BURNS, C.J., HEEN, AND WATANABE, JJ.

---

[*]The opinion was originally filed on May 4, 1993. On May 14, 1993, defendant–appellant filed a motion for reconsideration of the May 4, 1993 opinion. On May 21, 1993, the court granted the motion for reconsideration, directing the replacement of the May 4, 1993 opinion with this amended opinion.

*Per Curiam.* In a jury–waived trial, the District Court of the First Circuit (district court) convicted defendant–appellant Michael Akio Nishi (Defendant) of (1) driving under the influence of intoxicating liquor (DUI) in violation of Hawai'i Revised Statutes (HRS) § 291–4(a)(1) (1985);[1] (2) operating a motor vehicle which was not insured under a no–fault policy (No No–Fault Insurance) in violation of HRS § 431:10C–104(a) (1987 Spec. Pamphlet);[2] and (3) operating a vehicle without a certificate of inspection (No Safety Check) in violation of HRS § 286–25 (1985).[3] After finding that the No No–Fault Insurance violation was a second offense, the district court imposed an enhanced sentence of a $3,000 fine on Defendant.[4]

---

[1] When defendant Michael Akio Nishi (Defendant) allegedly committed the offense, Hawai'i Revised Statutes (HRS) § 291–4(a)(1) (1985) read as follows:

(a) A person commits the offense of driving under the influence of intoxicating liquor if:

(1) The person operates or assumes actual physical control of the operation of any vehicle while under the influence of intoxicating liquor[.]

[2] HRS § 431:10C–104(a) (1987 Sp. Pamphlet) provides in relevant part that "no person shall operate or use a motor vehicle upon any public street, road or highway of this State at any time unless such motor vehicle is insured at all times under a no–fault policy."

[3] HRS § 286–25 (1985) reads as follows:

**Operation of a vehicle without a certificate of inspection.** Whoever operates, permits the operation of, causes to be operated, or parks any vehicle on a public highway without a current official certificate of inspection, issued under section 286–26, shall be fined not more than $100 or imprisoned not more than thirty days or both.

[4] HRS § 431:10C–117(a)(2) (Supp. 1992) provides in relevant part that "if the person is convicted of not having had a no–fault policy in effect at the time the citation was issued, the fine shall be $1,000 for the first offense and a minimum of $3,000 for each subsequent offense[.]"

On appeal, Defendant contends that (A) the district court reversibly erred in admitting the police officer's opinion as to the results of the field sobriety tests the officer administered to Defendant; (B) the evidence was insufficient to establish beyond a reasonable doubt that Defendant was guilty of DUI; and (C) the court erred in sentencing Defendant for No No–Fault Insurance as a second time offender because the State of Hawai'i (State) failed to submit legally sufficient proof of Defendant's first conviction. We affirm the convictions. Regarding the No No–Fault Insurance conviction, however, we vacate the sentence and remand for resentencing.

## FACTS

At trial, the State's evidence established the following facts. Just before midnight on July 20, 1990, police officer Edmund Barroga (Officer Barroga) of the Honolulu Police Department (HPD) was driving westbound on the H–1 Freeway near the Houghtailing overpass. He observed a Honda station wagon driven by Defendant traveling approximately one car length ahead of his vehicle in the fast lane. He noticed the station wagon "straddling the left yellow line closest to the medial barrier." The station wagon then "swerve[d] to the right several times riding over the chatter bumps on the right side of that lane." As his vehicle got closer to the station wagon he noticed "an expired registration sticker, also an expired safety check on the bumper of the [station wagon]."

Officer Barroga pulled over the station wagon at the Ahua off–ramp. He approached the station wagon and asked Defendant for his driver's license and no–fault insurance card. The officer observed that Defendant's eyes were red, glassy, and bloodshot and noted a strong odor of alcohol emanating from Defendant's breath. Defendant stated that "his driver's license was suspended and he had no no–fault insurance."

Officer Barroga then asked Defendant to step out of the station wagon to take a field sobriety test, to which Defendant consented. As Defendant got out of his car, he appeared "nervous and shaken." Defendant said that he was taking antibiotics, but was not under a doctor's care. Defendant did not complain of any physical condition that might affect his performance of the test.

The officer had Defendant perform the field sobriety test, consisting of three separate tests, namely: (1) "heel–to–toe" test; (2) "leg raised" test; and (3) "arch back" test. Before Defendant performed each of the three tests, Officer Barroga demonstrated and explained each test, and Defendant appeared to understand the instructions. In Officer Barroga's opinion, Defendant failed to pass each of the three tests. Therefore, the officer arrested Defendant for DUI.

After the State completed its case–in–chief, Defendant chose not to put on any evidence. The court found Defendant guilty of DUI, No No–Fault Insurance, and No Safety Check.[5] Regarding the No No–Fault Insurance offense, the court sentenced Defendant as a two–time offender.

## DISCUSSION

### A.

Officer Barroga testified that he had Defendant perform the "heel–to–toe," "leg raised," and "arch back" tests. He opined that Defendant failed (1) the "heel–to–toe" test because Defendant "did not touch heel to toe all nine [steps]" and "appeared unsteady when he did [the test;]" (2) the "leg raised" test because Defendant "dropped his left leg and touched the ground twice to regain his

---

[5] The court acquitted Defendant of the charges of crossing a solid yellow line in violation of HRS § 291C–38(c)(6) (1985) and failing to pay vehicle registration tax in violation of HRS § 249–2 (1985).

balance[;]" and (3) the "arch back" test because Defendant "bobbed back and forth . . . [and] his eyelids also fluttered [when the eyes should have been closed]."[6] Defendant objected to the opinion testimony on the ground of "no proper foundation having been laid." Defendant argued the necessity of a foundation regarding "how [Officer Barroga] derives these opinions, what [they are] based on, what training and experience he's had." The court overruled Defendant's objection.

Hawai'i Rules of Evidence (HRE) Rule 701 provides as follows:

> **Opinion testimony by lay witnesses.** If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (1) rationally based on the perception of the witness, and (2) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue.

The commentary to HRE Rule 701 states that Rule 701 "retains the common–law requirement that lay opinion be based upon first-hand knowledge[.]" Thus, for an opinion testimony to be admissible under HRE Rule 701, "the witness must have personal knowledge of matter that forms the basis of testimony of opinion; the testimony must be based rationally upon the perception of the witness; and of course, the opinion must be helpful to the jury (the principal test)." 1 J. Strong, MCCORMICK ON EVIDENCE (hereafter MCCORMICK) § 11, at 45–46 (4th ed. 1992) (footnotes omitted). The "rational" test means whether the opinion "is one which a normal person would form on the basis of the observed facts." 3 J. Weinstein & M. Berger, WEINSTEIN'S EVIDENCE (hereafter WEINSTEIN'S EVIDENCE) ¶ 701[02], at 701–18 (1992) (footnote

---

[6] Officer Barroga was not qualified as an expert witness.

omitted). Also, "where relevancy requires, a foundation must be laid as to the witness' personal knowledge of facts to which the observed facts are being compared."[7] McCORMICK § 11 at n.22. Finally, "Rule 701 is a rule of discretion." WEINSTEIN'S EVIDENCE ¶ 701[02] at 701–31. We apply the foregoing principles in analyzing Defendant's contention.

"[A] lay witness may express an opinion regarding another person's sobriety, provided the witness has had an opportunity to observe the other person." *State v. Murphy*, 451 N.W.2d 154, 155 (Iowa 1990). However, the Hawai'i Supreme Court observed that:

> "[F]ield sobriety tests are designed and administered to avoid the shortcomings of casual observation. 1 Am. J. Crim. L. 96 (1967)." *State v. Arsenault*, 115 N.H. 109, 111, 336 A.2d 244, 246 (1975). "They are premised upon the relationship between intoxication and the externally manifested loss of coordination it causes." *Id.* at 113, 336 A.2d at 247. They essentially require a suspected driver to go through prescribed routines so his physical characteristics may be observed by the police.

*State v. Wyatt*, 67 Haw. 293, 302, 687 P.2d 544, 551 (1984). In Hawai'i, it is common knowledge that, where a police officer reasonably believes that a motorist is DUI, the officer will order him out of the car and administer field sobriety tests to the motorist with his consent. Police departments conduct training sessions for police officers relating to the administering of field sobriety tests and print and issue to officers field sobriety tests work sheets containing instructions to be given to motorists undergoing these tests. *In re Doe*, 9 Haw. App. 406, 408–09, 844 P.2d 679, 681 (1992). In

---

[7] For example, "[b]efore an occurrence witness can testify that the car was going about 70 m.p.h., a foundation must be laid establishing the witness personal knowledge of how fast 70 m.p.h. really is." J. Strong, McCORMICK ON EVIDENCE § 11 at n.22 (4th ed. 1992).

fact, the record of this case suggests the use by Officer Barroga of a "424 form" containing instructions regarding the field sobriety tests prescribed by the HPD.

The State argues that Officer Barroga's opinion testimony that "Defendant failed the field sobriety test was rationally based upon his perception of the Defendant on the night of his arrest[,] . . . [and] the testimony was helpful to understanding Officer Barroga's conclusions regarding Defendant's physical condition." The State therefore concludes that Officer Barroga's opinion testimony met the requirements of HRE Rule 701 and was properly admitted into evidence. We do not believe that the opinion testimony met the rationality test.

Here, Officer Barroga did not merely testify that based on his perception of Defendant's lack of coordination he was of the opinion that Defendant was intoxicated. Rather, the officer's opinion testimony was that Defendant failed to pass the "heel-to-toe," "leg raised," and "arch back" tests that Defendant had undertaken to perform. A normal person may not necessarily form such an opinion if he or she had not been taught to grade the performance of the three field sobriety tests. In other words, this was a situation where foundational evidence as to Officer Barroga's knowledge of HPD's field sobriety testing procedures was necessary. The record discloses no foundational evidence in this regard.[8]

Accordingly, we conclude that the district court abused its discretion in admitting Officer Barroga's opinion testimony into

---

[8]The transcript reveals the following colloquy:

> Q [by Deputy Prosecuting Attorney] Did you receive any training concerning field sobriety tests?
>
> THE COURT: Well, you're over your 15 minutes so let's not get into too much of that.

Thereafter, the State failed to elicit any testimony regarding Officer Barroga's training.

evidence. However, the admission of Officer Barroga's opinion testimony did not prejudice Defendant and was harmless error.

In this case, the court, not a jury, was the trier of fact. The record clearly discloses that the court did not consider or rely upon Officer Barroga's opinion testimony. The court stated:

I'm not really, frankly, looking at the officer's specific evaluation. I'm evaluating the picture that I get of what the defendant did that day.

\* \* \*

[Defendant's] balance was extremely poor from what I can see here. He had balance and coordination problems on every one of the tests.

Consequently, although Officer Barroga's opinion testimony was improperly admitted into evidence, it was harmless error.

## B.

In resolving Defendant's second contention that the evidence was insufficient to establish Defendant's guilt of DUI beyond a reasonable doubt, we apply the following standard of review:

In a bench trial, a lower court's determination will be affirmed if "viewing the evidence in the light most favorable to the State, there is substantial evidence to support the conclusion of the trier of fact." *State v. Hopkins*, 60 Haw. 540, 542, 592 P.2d 810, 811 (1979) (citations omitted); *State v. Sujohn*, 5 Haw. App. 459, 461, 697 P.2d 1143, 1145 (1985).

*State v. Halmos*, 70 Haw. 14, 16, 755 P.2d 1226, 1227 (1988).

A review of the record discloses the following evidence testified to by Officer Barroga: (1) Defendant's station wagon was weaving within the fast lane; (2) Defendant's eyes were "red glassy bloodshot" and his breath had a strong odor of alcohol; and (3) while performing the field sobriety tests, Defendant lost his balance and had coordination problems. HPD police matron

Sylvia Dawson testified that, at the police station on the night in question, "[Defendant] had a strong odor of alcoholic beverage emitting from his breath, very red, watery eyes, and he did speak with a thick–tongued slurred speech."

We conclude that there was substantial evidence to support the district court's conclusion that Defendant was guilty of DUI.

## C.

At the time of sentencing, the State submitted to the district court, over Defendant's objection, a certified traffic abstract showing that a person with the same name as Defendant had a prior No No–Fault Insurance conviction. Based on the abstract, the court sentenced Defendant as a two–time offender regarding the No No–Fault Insurance conviction.

Defendant contends that the State's proof of the prior No No–Fault Insurance conviction was unsatisfactory because (1) the State was required to submit a "certified copy of the judgment," rather than a certified copy of a traffic abstract; (2) the State failed to show that at the time of Defendant's prior No No–Fault Insurance conviction, Defendant was represented by counsel or had knowingly and intelligently waived such representation; and (3) the State failed to show that Defendant was the Michael Nishi who was previously convicted of No No–Fault Insurance as shown on the traffic abstract.

## 1.

In *State v. Hoglund*, 71 Haw. 147, 785 P.2d 1311 (1990), the defendant raised the issue of the adequacy of a certified copy of a traffic abstract to prove his prior DUI conviction. However, the supreme court refused to consider this issue because it had been raised for the first time on appeal, and the trial court did not consider and rule on this issue. Thus, this issue is one of first impression.

Referring to *State v. Afong*, 61 Haw. 281, 602 P.2d 927 (1979), which involved enhanced sentencing for burglary in the first degree, a felony, Defendant asserts that, to prove a prior conviction, the State must submit a certified copy of the judgment and testimony from a probation officer or other credible source identifying the defendant. Defendant argues that submission of a certified copy of his traffic abstract was insufficient. We disagree.

The supreme court has not laid down any rule that a prior conviction may be proved only by a certified copy of a judgment. Rather, the Hawai'i Penal Code provides that a "prior conviction may be proved by *any evidence*, including fingerprint records made in connection with arrest, conviction, or imprisonment, that *reasonably satisfies the court* that the defendant was convicted." HRS § 706–666 (1985) (emphases added). The supreme court has stated that "the fact of [the defendant's] prior conviction must be established by *satisfactory evidence*[.]" *State v. Freitas*, 61 Haw. 262, 277, 602 P.2d 914, 925 (1979). The question we must answer is whether a certified copy of a person's traffic abstract is satisfactory evidence to establish his prior No No–Fault Insurance conviction.

In resolving the question, we consider the following factors. First, a judgment of conviction in a circuit court is different from a judgment of conviction in a district court. While a circuit court judgment generally is a one–page document, a district court judgment consists of the clerk's notation on the court's daily calendar containing numerous cases. *See* Hawai'i Rules of Penal Procedure Rule 32(c)(2).

Second, Hawai'i's statute authorizes the use of traffic abstracts. The Motor Vehicle Safety Responsibility Act, HRS Chapter 287, requires the traffic violations bureau of a district court to furnish upon request a person's certified abstract "relating to all alleged moving violations, as well as any convictions resulting therefrom, arising from the operation of a motor vehicle." HRS § 287–3 (1985).

Third, we take judicial notice of the fact that a person's certified traffic abstract issued by the traffic violations bureau of the District Court of the First Circuit includes not only the person's name, but also the person's driver's license number, which is identical to the person's social security number, and the person's date of birth. We deem that such information contained in the abstract is adequate to connect a defendant with a prior conviction.

Based on the foregoing factors, we conclude that a certified copy of a person's traffic abstract is satisfactory evidence to establish his prior No No–Fault Insurance conviction.

### 2.

Citing *State v. Vares*, 71 Haw. 617, 801 P.2d 555 (1990), Defendant argues that the State failed to show that at the time of his prior conviction, he was represented by counsel or knowingly and intelligently waived representation. Defendant misreads *Vares*.

In *Vares*, the court imposed on the defendant, as a third–time DUI offender, a fine, revocation of his driver's license for three years, and a jail term of 180 days, of which all but 15 days were suspended subject to certain conditions. On appeal, the supreme court held that:

> An uncounseled conviction cannot be used collaterally to support an enhanced sentence *where such enhanced sentence includes a term of imprisonment.*

*Vares*, 71 Haw. at 621, 801 P.2d at 557 (citations omitted) (emphasis added). In making that holding, the supreme court distinguished its prior holding in *Hoglund, supra*, that an uncounseled prior conviction may support an enhanced sentence where imprisonment is not imposed. *Hoglund*, 71 Haw. at 152, 785 P.2d at 1313.

Here, the district court did not impose any term of imprisonment for the No No–Fault Insurance conviction. Thus, the State

was not required to show that Defendant was counseled at the time of his prior No No–Fault Insurance conviction.

### 3.

Finally, Defendant asserts that the State failed to submit any evidence to show that Defendant was the same Michael Nishi who had been convicted of a No No–Fault Insurance offense as shown on the certified copy of a traffic abstract submitted to the court.[9] We agree.

"Unless conceded by the defendant, the [S]tate is required to show, by evidence satisfactory to the court, . . . the fact of the defendant's prior conviction[.]" *Afong*, 61 Haw. at 282–83, 602 P.2d at 929. Thus, the State must satisfactorily identify the defendant being sentenced to be the same person who was previously convicted.

Although we have stated above that a certified copy of a traffic abstract is satisfactory evidence to establish a prior No No–Fault Insurance conviction, the record discloses no evidence to tie Defendant with the Michael Nishi of the traffic abstract. The State presented no evidence of Defendant's driver's license number or social security number or birth date that could be compared with information appearing on the traffic abstract.

### CONCLUSION

For the reasons set forth above, we hold that (A) the district court's admission of the police officer's opinion testimony regarding the results of the field sobriety test was harmless error; (B) there was substantial evidence to support Defendant's guilt for DUI; and (C) there was insufficent proof of Defendant's prior conviction to support the enhanced sentence for the No No–Fault Insurance offense.

---

[9] The certified copy of the traffic abstract was not introduced into evidence and, therefore, is not a part of the record.

We affirm the convictions. However, as to the No No–Fault conviction only, we remand the case for resentencing of Defendant as a first–time offender.

*Patsy M. Kim*, Deputy Public Defender, on the brief for defendant–appellant.

*Doraine Meyer Belnap*, Deputy Prosecuting Attorney, on the brief for plaintiff–appellee.