27 P.3d 404

STATE of Hawai'i, Plaintiff–Appellee,

v.

Keliimana KEKAHUNA, Defendant–Appellant.

No. 23427.

Intermediate Court of Appeals of Hawai'i.

June 25, 2001.

Jon N. Ikenaga, Deputy Public Defender, on the briefs, for Defendant–Appellant.

Loren J. Thomas, Deputy Prosecuting Attorney, City and County of Honolulu, on the briefs, for Plaintiff–Appellee.

BURNS, C.J., LIM and FOLEY, JJ.

Opinion of the Court by BURNS, C.J.

Defendant–Appellant Keliimana Kekahuna (Kekahuna) appeals from the district court's [1] April 7, 2000 judgment pertaining to his driving of an automobile on November 17, 1999. Kekahuna was charged with the following offenses:

(A) Driving Under the Influence of Intoxicating Liquor (DUI), Hawai'i Revised Statutes (HRS) § 291–4(a)(1) (Supp. 1999).

(B) Unsafe Changing of Lanes, HRS § 291C–49 (1993).

(C) Defective Tail Light, HRS § 291–31 (1993).

After a trial on April 7, 2000, Kekahuna was found guilty of (A) and (C) and not guilty

1. District Court Judge Colette Garibaldi presided in this case.

of (B) [2]. As to item (A), he was sentenced to a suspension of his driver's license for 90 days, an alcohol assessment and any recommended treatment, a $250 fine, $107 driver education assessment, and a $25 criminal injury compensation fee. As to item (C), he was sentenced to pay a fine of $15. The district court denied the request to enter a stay pending appeal.

The district court's April 7, 2000 dispositional calendar has erroneously transposed the court's actions as to items (B) and (C). We vacate those actions and remand for corrective action.

Kekahuna challenges the district court's April 7, 2000 judgment only as to item (A). We affirm.

## RELEVANT STATUTE

HRS § 291–4(a)(1) (Supp.1999) prohibits the operation of a vehicle by a person who is "under the influence of intoxicating liquor in an amount sufficient to impair the person's normal mental faculties or ability to care for oneself and guard against casualty[.]" [3]

## POINT ON APPEAL

Kekahuna states his point on appeal as follows: "The court erred in admitting [Officer] Axt's opinion testimony as to Kekahuna's performance on the FST[s] [(field sobriety tests)] where [Plaintiff–Appellee State of Hawai'i] failed to lay a proper foundation in accordance with *State v. Toyomura.*"

## BACKGROUND

Traveling eastbound on the H–1 freeway on Wednesday, November 17, 1999, Honolulu Police Department (HPD) Police Officer William Axt (Officer Axt) observed that the car ahead of him (a) changed lanes without using a turn signal, (b) had a driver's side tail light that was out, and (c) wove in and out of a one traffic lane. Officer Axt caused the driver of the car to pull over and stop. Kekahuna was the driver. Officer Axt observed that Kekahuna's eyes were red and bloodshot and he smelled the odor of an alcoholic beverage on Kekahuna's breath. Kekahuna told Officer Axt that he was taking the pain killer "Motrin" for an eye infection. Officer Axt asked Kekahuna to step out of the car to participate in FSTs. Officer Axt testified that Kekahuna (1) failed the Horizontal Gaze Nystagmus (HGN) test when he exhibited three out of the three clues possible for each eye: a lack of smooth pursuit, distinct nystagmus, and nystagmus prior to 45 degrees; (2) failed the walk-and-turn test when he exhibited the following four out of the eight clues: unable to maintain his balance during the instructional phase, began the test before being instructed to, raised his arms while walking, and did not make the turn as instructed; and (3) failed the one-leg-stand test when he exhibited the following two out of the four clues: raised his arms and put his foot down. Based on Kekahuna's driving performance and performance of the FSTs, Officer Axt opined that Kekahuna was impaired to the point where he could not operate a motor vehicle safely.

Officer Axt testified that he had been with the police department "[j]ust shy of ten years" and had made "[c]lose to 300" stops, 175 of which had led to arrests. He further testified that while he was at the Honolulu Police Academy in Waipahu, he was taught how to conduct the three FSTs, that his training was National Highway Traffic Safety Administration (NHTSA) certified, and that he "was re-certified in 1997 of July, and that class consisted of twenty-four hours, twenty hours of classroom, and four hours of practical training."

Kekahuna testified that he had worked a nine-hour shift as a bus driver taking tourists from Waikiki to the airport. At about 3:00 or 4:00 p.m., he went to a friend's house to "talk story." At about 5:00 to 6:00 p.m., he

---

**2.** In his closing argument in the district court, the Deputy Prosecuting Attorney stated, "As to the unsafe lane change, State probably arraigned on the wrong charge and would concede on that one."

**3.** In contrast, Hawai'i Revised Statutes § 291–4(a)(2) (Supp.1999) is violated when "[t]he person operates or assumes actual physical control of the operation of any vehicle with .08 or more grams of alcohol per one hundred milliliters or cubic centimeters of blood or .08 or more grams of alcohol per two hundred ten liters of breath."

went to another friend's house and drank three beers. He returned to his home in Ewa Beach at about 7:30 p.m. and ate dinner. He arrived at Stuart Anderson's in Waimalu at 9:30 p.m. and, while there, drank one beer. He was taking his cousin to his cousin's house in Kalihi when he was stopped by Officer Axt.

## RELEVANT PRECEDENT

"[F]ield sobriety tests are designed and administered to avoid the shortcomings of casual observation." "They are premised upon the relationship between intoxication and the externally manifested loss of coordination it causes." They essentially require a suspected driver to go through prescribed routines so his physical characteristics may be observed by the police.

*State v. Wyatt,* 67 Haw. 293, 302, 687 P.2d 544, 551 (1984) (citations omitted).

When the issue is probable cause of intoxication, this court has concluded that

[b]efore HGN test results can be admitted into evidence in a particular case, however, it must be shown that (1) the officer administering the test was duly qualified to conduct the test and grade the test results; and (2) the test was performed properly in the instant case.

... [I]t is not clear what HPD's "standard training" consists of and whether HPD's standard training program meets the requirements of the NHTSA. Therefore, we have no way of knowing the extent and nature of [the officer's] HGN training, whether [the officer's] training was supervised by certified instructors, whether [the officer] was certified to administer the test, and whether [the officer] received periodic retraining to refresh himself on his HGN test administration skills.

*State v. Ito,* 90 Hawai'i 225, 244, 978 P.2d 191, 210 (App.1999) (footnote and citations omitted).

When the issue is proof of intoxication beyond a reasonable doubt, the Hawai'i Supreme Court has concluded that

Toyomura is also correct in observing that insufficient foundation was laid to permit Officer Fujihara, *based on Toyomura's performance of the FSTs*, to render a lay [4] opinion as to whether he was intoxicated, inasmuch as the prosecution elicited no testimony establishing that (1) the horizontal gaze nystagmus, "one-leg stand," and "walk-and-turn" procedures were elements of the HPD's official FST protocol, (2) there was any authoritatively established relationship between the manner of performance of these procedures and a person's degree of intoxication, and (3) Officer Fujihara had received any specific training in the administration of the procedures and the "grading" of their results. Therefore, Toyomura is correct that Officer Fujihara was improperly permitted to render an opinion that he (*i.e.,* Toyomura) was intoxicated based in part on Officer Fujihara's assessment of the results of the FSTs....

Toyomura is simply wrong, however, in concluding that "the rule in *Nishi*[5] was violated in this case" in such a manner as to require that his DUI conviction be vacated. As the trial court correctly noted, "any ... lay person," including a police officer, "can have an opinion regarding sobriety." As set forth above, Officer Fujihara expressly testified that, over the course of his approximately nineteen years as a police officer, he "had an opportunity to observe people who had been drinking and at different levels[.]" And, as noted, the record reflects that the trial court both assured Toyomura that he was considering Officer Fujihara's testimony "only from a lay point of view" and that the trial court applied its independent assessment of the evidence in finding Toyomura guilty of DUI....

Examined in the light of the entire proceedings and given the effect that the

---

4. In context, it appears that this word should have been "expert" rather than "lay" because "testimony establishing" the three facts that follow would qualify Officer Fujihara as an expert.

5. In *State v. Nishi,* 9 Haw.App. 516, 852 P.2d 476 (1993), this court decided that the error in allowing the police officer's testimony into evidence was harmless because the trial court specifically stated that it did not rely on the officer's opinions in convicting Nishi.

whole record shows it to be entitled, we are convinced that there is no reasonable possibility that any improper lay opinion testimony on the part of Officer Fujihara contributed to Toyomura's DUI conviction. Accordingly, we hold that any error in the admission of that testimony was harmless.

*State v. Toyomura*, 80 Hawai'i 8, 26–27, 904 P.2d 893, 911–12 (1995) (citations omitted, emphasis in the original, footnotes added).

## DISCUSSION

In *Toyomura*, the Hawai'i Supreme Court noted (a) the lack of "any authoritatively established relationship between the manner of performance of these [FST] procedures and a person's degree of intoxication," and (b) that "the trial court both assured Toyomura that [it] was considering [the police officer's] testimony 'only from a lay point of view' and that the trial court applied its independent assessment of the evidence in finding Toyomura guilty of DUI." The Hawai'i Supreme Court concluded that a police officer, based on his/her "lay" observations, can have a "lay" opinion that an arrestee is not sober, and that a police officer cannot base his/her "lay" opinion that an arrestee is not sober on his/her "assessment of the results of the FSTs."

■ We distinguish the phrase "the manner of performance of these procedures" from the phrase "the results of the FSTs." We interpret the phrase "the manner of performance of these procedures" as referring to the physical actions or inactions of the person tested while taking the FSTs. We interpret the phrase "the results of the FSTs" as referring to the "pass/fail" results.

■ As noted in *Toyomura*, a sufficient foundation must be laid to permit the police officer who administered the FSTs to use his/her "assessment of the results of the FSTs" to render an opinion as to whether the arrestee was intoxicated. In Kekahuna's case, we conclude that the evidence qualified Officer Axt to testify as to the "pass/fail" results of the FSTs he had administered.

We note that Officer Axt testified that the pass/fail result of the HGN test is not accurate twenty-three percent of the time, the pass/fail result of the one-leg-stand test is not accurate thirty-four percent of the time, and the pass/fail result of the walk-and-turn test is not accurate thirty-two percent of the time. Officer Axt further testified, in relevant part, as follows:

[DEFENSE COUNSEL]: The less clues appear on the test, isn't it true that that means it's less likely that he's in fact intoxicated or impaired. Less clues, less likelihood——

[OFFICER AXT]: Through my experience, I would say no.

Q Okay. Are you saying no because there's other variables?

A Because they're [sic] have been times where people do extremely well on the field sobriety test, but have a blood alcohol level which is well above .20.

. . . .

A There are other people who do terrible on the test, where their alcohol level is low.

[DEFENSE COUNSEL]: So . . . it could depend on the individual, right?

A That is correct.

This testimony by Officer Axt establishes that the pass/fail results of the FSTs are not, by themselves, substantial evidence that beyond a reasonable doubt the person tested was "under the influence of intoxicating liquor in an amount sufficient to impair the person's normal mental faculties or ability to care for oneself and guard against casualty[.]" HRS § 291-4(a)(1). However, the record does not support an argument that the court accorded too much weight to the pass/fail results of the FSTs. The only relevant statement made by the court on the subject of what evidence it relied on was that "[w]ith respect to the driving under the influence matter, however, I do find the officer's testimo[n]y to be far more credible than Mr. Kekahuna's and I do find Mr. Kekahuna guilty of the violation."

■ In Kekahuna's case, there is evidence of (a) his manner of performance of the FST procedures and his physical actions and inactions while taking the FSTs, (b) the pass/fail results of the FSTs, and (c) his driving per-

formance. Although "(b)" is not by itself substantial evidence that, beyond a reasonable doubt, Kekahuna was "under the influence of intoxicating liquor in an amount sufficient to impair the person's normal mental faculties or ability to care for oneself and guard against casualty[,]" HRS § 291-4(a)(1), the combination of all three of these items of evidence constitutes such substantial evidence.

### CONCLUSION

Accordingly, we affirm the district court's April 7, 2000 judgment convicting Kekahuna of (A), Driving Under the Influence of Intoxicating Liquor, HRS § 291-4(a)(1).

We vacate the district court's April 7, 2000 judgment finding Kekahuna guilty of (B), Unsafe Changing of Lanes, HRS § 291C-49, and finding Kekahuna not guilty of (C), Defective Tail Light, HRS § 291-31. We remand (B) and (C) for an amendment of the judgment to show an acquittal of (B) and a conviction of (C) rather than the opposite.