STATE OF HAWAI`I, Plaintiff-Appellee,
v.
ADLA TRUTH KEHDY, Defendant-Appellant
No. 29146.
Intermediate Court of Appeals of Hawaii.
June 25, 2009.
On the briefs:
Hayden Aluli, for Defendant-Appellant.
Renee Ishikawa Delizo, Deputy Prosecuting Attorney for the Plaintiff-Appellee.

SUMMARY DISPOSITION ORDER
WATANABE, Acting Chief Judge, and LEONARD, J., with NAKAMURA, J., Concurring.
Defendant-Appellant Adla Truth Kehdy (Kehdy) appeals the Final Judgment and Sentence filed in the District Court of the Second Circuit, Lahaina Division (District Court), on April 7, 2008.[1] Kehdy was convicted of Operating a Vehicle Under the Influence of an Intoxicant (OVUII), in violation of Hawaii Revised Statutes (HRS) § 291E-61(a) (Supp. 2007).

I. BACKGROUND
On October 16, 2007, Kehdy was charged with OVUII, in violation of HRS § 291E-61(a) and 291E-61(b) and Reckless Driving, in violation of HRS § 291-2 (Supp. 2007).
On November 21, 2007, Kehdy filed a Motion to Suppress Evidence (Motion to Suppress). Kehdy moved to suppress all physical observations by police officers and any test results performed for blood-alcohol content based on an unlawful seizure claim.
At trial on February 25, 2008, the State called two witnesses to provide the foundation for Kehdy's blood-alcohol test and the results. However, the results of Kehdy's blood-alcohol test were ultimately suppressed because Officer Jonathan Kaneshiro (Officer Kaneshiro) failed to advise Kehdy of her right to refuse to submit to testing pursuant to HRS § 291E-11(b)(2).
The State then called Officer Kaneshiro who, at the time of trial, had been an officer for seven years. Officer Kaneshiro testified that on September 2, 2007, he observed a vehicle on Honoapiilani Highway turn onto Dickenson Street and make a wide-radius turn that crossed into the oncoming lane of traffic. The vehicle straddled both lanes, and an oncoming vehicle stopped. Officer Kaneshiro believed that driver was possibly impaired and he therefore initiated a traffic stop. Officer Kaneshiro asked Kehdy to provide her driver's license, registration, and proof of insurance. Officer Kaneshiro noticed that there was a passenger in the front seat of the vehicle. Officer Kaneshiro also noted that Kehdy's eyes were red, her speech was slurred, and he detected the odor of liquor on her breath as she spoke to him. Kehdy then performed three field-sobriety tests; the horizontal gaze nystagmus (HGN) test, the walk-and-turn test, and the one-leg-stand test. Officer Kaneshiro testified about his training and qualifications to administer and evaluate field-sobriety tests.
With respect to the HGN test, Officer Kaneshiro stated that he was looking for three different clues, the lack of smooth pursuit, distinct nystagmus at maximum deviation, and the onset of nystagmus prior to forty-five degrees. Over the objection of defense counsel for lack of foundation, Officer Kaneshiro stated: there are a total of six clues observable; he observed four clues when administering the test to Kehdy; and, an observation of four out of six clues indicate that a subject is impaired.
Officer Kaneshiro stated that there are a total of eight clues possible for the walk-and-turn test, he observed four clues when administering the test to Kehdy, and that the presence of two clues indicates impairment. Over the objection of defense counsel for lack of foundation, Officer Kaneshiro stated that Kehdy did not pass the walk-and-turn test.
Officer Kaneshiro testified that Kehdy passed the one-leg-stand test because she only exhibited one out of four clues on the test.
After Kehdy performed the field-sobriety tests, Officer Kaneshiro believed there was probable cause to arrest Kehdy.
At the continued trial on March 31, 2008, the defense called Grace Bumanglag (Bumanglag), who testified that on September 2, 2007, she and Kehdy were at a friend's house and she did not see Kehdy consume any liquor. Bumanglag and Kehdy left the house to go to a sports bar but it was closed so they drove back to their friend's house. Bumanglag stated that Kehdy drove her mother's SUV in a "normal" manner, the corner of Dickenson Street is a little bit narrow so Kehdy had to make a wider turn with the SUV, there was no near collision with an oncoming car, and Bumanglang did not see Kehdy cross over any lane markings.
At the continued trial on April 7, 2008, Kehdy was called to testify only for the hearing on a motion to suppress. Kehdy denied that she crossed any line when driving on Honoapiilani Highway prior to turning onto Dickenson Street. Kehdy denied that there was almost an accident with oncoming traffic or another car before she was stopped by Officer Kaneshiro.
At the beginning of Kehdy's cross-examination, the prosecution asked:
Q. Ms. Kehdy, you are familiar with what it means to be under oath; right?
A. Yes.
Q. You understand you can go to jail for perjury; right?
A. Yes.
Kehdy (again) denied that another car had to stop to avoid being hit by her. The prosecution closed the cross-examination with the following exchange:
Q. Do you have a prior relationship with Officer Kaneshiro?
A. No.
Q. Do you have a relationship with him now?
A. No.
Q. But you are saying that he is lying about what he saw; is that right?
Mr. Aluli (defense counsel): Objection, your Honor. Asking a witness to comment on whether another witness has lied is inappropriate. I object, your Honor. It is for the trier-of-fact, your Honor.
The Court: Mr. Werk.
Mr. Werk (prosecution): What's the objection?
Mr. Aluli: It is inappropriate to ask the defendant whether or not the police officer 
Mr. Werk: Inappropriate. I am not aware of that.
Mr. Aluli: Inappropriate. I object, your Honor.
The Court: Overruled. Go ahead.
Mr. Werk: You say the officer is lying about what he says he observed from you that night?
A. There are certain areas in his testimony that are false. There was no car, oncoming car.
Q. Can you give me any reason why Officer Kaneshiro would want to lie about what he observed?
Mr. Aluli: Objection, your Honor. Speculation, your Honor. Incompetent of this witness.
The Court: Sustained.
Mr. Werk: So he is willing to put his career on the line and perjure himself to lie on the stand about you?
Mr. Aluli: Objection, your Honor. Same objection. This is really 
The Court: Sustained.
Mr. Aluli: Thank you.
Mr. Werk: Nothing further at this time, your Honor.
(Format altered.)
With respect to the motion to suppress, the District Court found that Officer Kaneshiro had specific and articulable reasons and facts and a reasonable suspicion to stop Kehdy. As noted above, the District Court excluded evidence of a blood-alcohol test, as well as responses to questions about what she was drinking.
The District Court found Kehdy guilty of OVUII under HRS § 291E-61(a). In pronouncing Kehdy guilty, the District Court stated:
Further, the contact with the defendant, the red eyes, the slurred speech and the odor of liquor on her breath, the Court does find that the officer's testimony is credible, that he did administer the field-sobriety maneuvers, found four of six clues in the h.g.n., four of eight clues in the walk and turn. The Court finds that though there may be some minor inconsistencies in the officer's testimony regarding keys and so on and so forth, the Court does find that he was a credible witness.
No particular reason to find that he would make up something regarding the car in the opposite direction having to stop or making these two left-hand crossings of the line over into Honoapiilani Highway. The Court does find that he is credible.

II. POINTS OF ERROR
On appeal, Kehdy raises four points of error: (1) the District Court erred when it admitted evidence of the HGN test because there was a lack of foundation; (2) the District Court erred when it admitted the arresting officer's testimony that Kehdy failed a walk-and-turn test because there was a lack of foundation; (3) the District Court erred when it allowed the arresting officer to opine that Kehdy was impaired; and (4) the District Court erred when it permitted the prosecutor to ask Kehdy to comment on the veracity of the arresting officer. Kehdy argues that, disregarding the inadmissible evidence, there was insufficient evidence to convict her of OVUII.

III. DISCUSSION
Upon careful review of the record and the briefs submitted by the parties and having given due consideration to the arguments advanced and the issues raised by the parties, we resolve Kehdy's points of error as follows:
(1) Kehdy claims that the State failed to elicit sufficient foundation to admit evidence relating to the HGN test and therefore it should not have been admitted. The State contends that sufficient foundation was provided to admit Officer Kaneshiro's testimony regarding the HGN test.
"Before HGN test results can be admitted into evidence in a particular case, however, it must be shown that (1) the officer administering the test was duly qualified to conduct the test and grade the test results, and (2) the test was performed properly in the instant case." State v. Ito, 90 Hawai`i 225, 244, 978 P.2d 191, 210 (App. 1999) (citations omitted). In Ito, this court concluded that an officer was not qualified to conduct the HGN test and grade its results because there was no evidence that the officer's training met the requirements of the National Highway Traffic Safety Administration. Id. Thus, this court had no way of knowing the extent and nature of the training, whether the officer's training was supervised by certified instructors, whether the officer was certified to administer the test, and whether the officer received periodic retraining to refresh himself on his HGN test administration skills. Id.; see also State v. Mitchell, 94 Hawai`i 388, 397-98 15 P.3d. 314, 323-24 (App. 2000).
Kehdy initially points out that the transcript of Officer Kaneshiro's testimony states that his training material was from the National Hawaii Traffic Safety Administration, N.H.T.S.A. The transcript reflects that Officer Kaneshiro's testimony was transcribed as stating National Hawaii Traffic Safety Administration. The State urges this court to take judicial notice on appeal that a videotape of the proceedings shows that Officer Kaneshiro's answer was "National Highway Traffic Safety Administration." If the State disputes the record on appeal because a videotape of the proceeding differs from the transcript, it should have moved to correct the record pursuant to Rule 10(e) of the Hawai`i Rules of Appellate Procedure. It did not do so.
Assuming, nevertheless, that Officer Kaneshiro's testimony related to the National Highway Traffic Safety Administration, the State failed to provide sufficient foundation to admit his testimony regarding the HGN test. Officer Kaneshiro stated that he was provided with materials from the N.H.T.S.A. during his training and that his instructors went through the standard and guidelines from the N.H.T.S.A. However, Officer Kaneshiro did not state that the training he received met the standards of the N.H.T.S.A., as required under Ito, merely that he received materials from the N.H.T.S.A. regarding standards and guidelines. Like in Ito, there was no evidence that Officer Kaneshiro was supervised by certified instructors during his training.
In addition, Officer Kaneshiro stated that he was instructed about "different field-sobriety maneuvers," and how to perform those maneuvers. There was no evidence as to which field-sobriety maneuvers Officer Kaneshiro received N.H.T.S.A. instruction on. Officer Kaneshiro did testify that the field-sobriety maneuvers he administered to Kehdy were the HGN test, the walk-and-turn test, and the one-leg-stand test, these tests were part of the Maui Police Department field-sobriety test protocol, and that he received "specialized training" on each of the tests. Officer Kaneshiro failed to tie his training for the specific field-sobriety tests to the N.H.T.S.A. requirements. Under Ito, there was not a sufficient foundation to admit to testimony regarding the administration and/or grading of the HGN test.
Lastly, Officer Kaneshiro testified both that he did not receive any refresher courses in administering the field-sobriety test and that he had one refresher course when his intoxilyzer card expired. The expiration date of Officer Kaneshiro's intoxilyzer card was not elucidated. The periodic training to refresh an officer's administration skills requirement under Ito is not satisfied by one refresher course at an unspecified time during Officer Kaneshiro's seven-year career. Ito, 90 Hawai`i at 244, 978 P.2d at 210. Because the State failed to provide sufficient foundation for Officer Kaneshiro's testimony regarding the HGN test, it should not have been admitted into evidence.
(2) Kehdy claims that the District Court erred by admitting Officer Kaneshiro's opinion testimony that Kehdy failed the walk-and-turn test because there was insufficient foundation to support its admission into evidence.
An arresting officer may testify about physical observations about a defendant's performance on psychomotor field-sobriety tests, which are nonscientific and within the common experience of the ordinary citizen, and give an opinion as to whether the defendant was intoxicated. State v. Ferrer, 95 Hawai`i 409, 427, 23 P.3d 744, 762 (App. 2001). However, an officer may not testify that a defendant failed a psychomotor field-sobriety test unless sufficient foundation is provided to demonstrate that the officer was qualified to administer and grade the test. Ito, 90 Hawai`i at 244, 978 P.2d at 210. The walk-and-turn test is a psychomotor test. Ferrer, 95 Hawai`i at 427, 23 P.3d at 762.
Officer Kaneshiro testified that Kehdy raised her arms up during the test, broke her stance twice, and missed her heel-to-toe twice. Officer Kaneshiro stated that he observed Kehdy exhibit four out of eight clues. Officer Kaneshiro stated that the presence of two or more clues indicated that Kehdy was impaired and that she did not pass the walk-and-turn test. Since the State failed to provide sufficient foundation regarding Officer Kaneshiro's training to conduct and grade field-sobriety tests, he was only allowed to testify as to his observations of Kehdy's performance on the walk-and-turn test, not opine as to the grading of the results and significance of the clues such as not passing the test. Therefore, the District Court erred by admitting Officer Kaneshiro's testimony that Kehdy failed the results of the walk-and-turn test.
(3) Kehdy argues that Officer Kaneshiro's opinion testimony that Kehdy was impaired, based on his opinion that she failed the field-sobriety tests, was improperly admitted into evidence. We agree.
"A police officer may not testify, without proper foundation, about his opinion about whether a DUI defendant is intoxicated . . . based on FSTs." State v. Toyomura, 80 Hawai`i 8, 26, 904 P.2d 893, 911 (1995) (brackets omitted) (citing State v. Nishi, 9 Haw. App. 516, 523, 852 P.2d 476, 480 (1993)). In Nishi, this court held that sufficient foundational evidence as to an officer's knowledge of field sobriety testing procedures is necessary to admit opinion testimony that a defendant was intoxicated, when that testimony is based on the officer's opinion that the defendant failed the tests. Nishi, 9 Haw. App. at 523, 852 P.2d at 480.
Unlike in Nishi, the District Court considered the improper HGN test and walk-and-turn test results in determining that Kehdy was guilty of OVUII. See id. at 523-24, 852 P.2d at 480-81. Therefore, the errors are not harmless.
(4) Finally, Kehdy contends that the District Court erred by allowing the prosecutor to ask Kehdy to comment on Officer Kaneshiro's veracity. The State "acknowledges that the prosecutor's question in the underlying case was improper," but argues that "the prosecutorial misconduct was harmless beyond a reasonable doubt, because Kehdy's trial was a bench trial."
"Allegations of prosecutorial misconduct are reviewed under the harmless beyond a reasonable doubt standard, which requires an examination of the record and a determination of whether there is a reasonable possibility that the error complained of might have contributed to the conviction." State v. Rogan, 91 Hawai`i 405, 412, 984 P.2d 1231, 1238 (1999) (internal quotation marks and citations omitted) (quoting State v. Sawyer, 88 Hawai`i 325, 329 n.6, 966 P.2d 637, 641 n.6 (1998)).
"Prosecutorial misconduct warrants a new trial or the setting aside of a guilty verdict only where the actions of the prosecutor have caused prejudice to the defendant's right to a fair trial." State v. McGriff, 76 Hawai`i 148, 158, 871 P.2d 782, 792 (1994). "In order to determine whether the alleged prosecutorial misconduct reached the level of reversible error, we consider the nature of the alleged misconduct, the promptness or lack of a curative instruction, and the strength or weakness of the evidence against defendant." State v. Agrabante, 73 Haw. 179, 198, 830 P.2d 492, 502 (1992).
In State v. Maluia, 107 Hawai`i 20, 108 P.3d 974 (2005), the Hawai`i Supreme Court stated:
We hold that the prosecution may not ask a defendant to comment on another witness's veracity. Such questions, referred to as "were-they-lying" questions, are improper for the following reasons: (1) they invade the province of the jury, as determinations of credibility are for the jury; (2) they are argumentative and have no probative value; (3) they create a risk that the jury may conclude that, in order to acquit the defendant, it must find that a contradictory witness has lied; (4) they are inherently unfair, as it is possible that neither the defendant nor the contradictory witness has deliberately misrepresented the truth; and (5) they create a "no-win" situation for the defendant: if the defendant states that a contradictory witness is not lying, the inference is that the defendant is lying, whereas if the defendant states that the witness is lying, the defendant risks alienating the jury (particularly if the contradictory witness is a law enforcement officer). See, e.g. United States v. Boyd, 312 U.S. App. D.C. 35, 54 F.3d 868, 871 (D.C. Cir. 1995). . . .
107 Hawai`i at 24, 108 P.3d at 978.
The supreme court in Maluia also stated:
We have repeatedly held that we will not overturn a defendant's conviction if the prosecution's misconduct was harmless beyond a reasonable doubt. In order to determine whether the alleged prosecutorial misconduct reached the level of reversible error, we consider the nature of the alleged misconduct, the promptness or lack of a curative instruction, and the strength or weakness of the evidence against defendant.
Maluia, 107 Hawai`i at 27, 108 P.3d at 981 (quoting Agrabante, 73 Haw. at 198, 830 P.2d at 502).
We agree with the State's contention that the District Court is presumed not to be influenced by incompetent evidence. State v. Antone, 62 Haw. 346, 353, 615 P.2d 101, 108 (1980). However, we reject the State's assertion that the prosecutorial misconduct was harmless beyond a reasonable doubt simply because Kehdy had a bench trial. See, e.g., Liggett v. People, 135 P.3d 725, 733-35 (Colo. 2006) (defendant had a bench trial, yet the court analyzed whether the prosecutorial misconduct was harmless error); People v. Robinson, 67 Ill. App.3d 539, 384 N.E.2d 962 (1978)(prosecutorial misconduct for asking defendant to comment on veracity of witness in bench trial deemed harmless error).
The first two Agrabante/Maluia factors tend to weigh in favor of the State because, although the prosecutor violated clearly articulated standards of conduct, the prosecutor's misconduct was not otherwise particularly egregious and curative instructions are not an issue in a bench trial. However, the third factor, the strength or weakness of the evidence against the defendant, bears further scrutiny in this case. It appears that a central issue before the District Court was Officer Kaneshiro's credibility. In contrast to other "harmless error" cases, wherein "a wealth of overwhelming and compelling evidence tend[ed] to show defendant guilty beyond a reasonable doubt[,]" in this case, the only evidence supporting the guilty verdict against Kehdy was Officer Kaneshiro's testimony. Cf. State v. Mitchell, 94 Hawai`i 388, 398-400, 15 P.3d 314, 324-26 (App. 2000). In addition, the District Court's comment on its reasons for conviction  "[n]o particular reason to find that [Officer Kaneshiro] would make up something"  echoed the prosecutor's offensive inquiries. In light of the other errors in this case, however, we need not decide whether the prosecutorial misconduct in this case was harmless beyond a reasonable doubt.

IV. CONCLUSION
As Officer Kaneshiro's testimony regarding his physical observations of Kehdy on September 2, 2007, was legally sufficient to support a conviction, we vacate the District Court's April 7, 2008 Final Judgment and Sentence and remand the case for a new trial. See State v. Maldonado, 108 Hawai`i 436, 445 n.14, 121 P.3d 901, 910 n.14 (2005).
CONCURRING DISPOSITION OF NAKAMURA, J.
I concur in the result.
NOTES
[1] The Honorable Rhonda I.L. Loo presided.